## A04A0834. HARRIS v. THE STATE.
(604 SE2d 565)

MILLER, Judge.

Stephen Rodriquez Harris was convicted on a single count of child molestation involving a young child in his mother's home daycare operation. In this appeal, Harris contends that his constitutional rights were violated, that two jurors were biased against him, and that his trial counsel provided ineffective assistance. After review, we affirm.

On appeal, the evidence must be viewed in a light most favorable to the jury's verdict and Harris no longer enjoys a presumption of innocence. *Mills v. State*, 244 Ga. App. 28, 29 (2) (535 SE2d 1) (2000). We do not weigh the evidence or determine witness credibility, but only determine whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). So considered, the evidence shows that a criminal investigation commenced shortly after the victim, then age five, disclosed to her mother that "Steve had tried to put his thing like what's between her daddy's legs in her mouth." She told her mother that "the thing was nasty because stuff came out of it." The child knew "Steve," the adult son of her licensed daycare provider, because Harris often stayed at his mother's home where she operated her

business. Harris's mother had cared for this child nearly every weekday from the age of ten months until the girl was almost five years old, and thereafter on a drop-in or as-needed basis.

After the child repeated her statement, her mother told her that "we need . . . to share this with [your] Daddy." The child began crying and pleading with her mother not to tell Harris or his mother. The child's father overheard her crying and asked her what was wrong. At his request, the child told him what had happened. Her father testified that she told him that "Steve had tried to put his thing like what's between [your] legs in my mouth." She told her parents that Harris had done this in the bathroom of his mother's house. Her parents promptly contacted authorities.

A detective trained to deal with children victimized by sexual abuse attended the interview of the child conducted by the Cobb County Department of Family and Children Services. The detective recorded that interview and the audiotape was played at trial. He identified State's Exhibit 4, a drawing in which the victim had drawn a circle around the part of the body "that Steve wanted her to put her mouth on." Exhibit 4 indicates a circle drawn around a body part labeled "thing that you pee with." The victim's father testified that his daughter said that "some white stuff came from the thing" and that by "thing" she said she meant "the thing like between her daddy's legs." He testified that his daughter said that "it had happened more than one time."

When the child testified at trial, she did so with a blackboard placed at an angle between her and Harris. Before trial, the State had requested that the victim be allowed to testify by closed circuit television or in some other way such that she would not have to look directly at Harris. The State then requested that a blackboard be positioned so that the child would not be able to see Harris's face but that the jury could see her and Harris. After Harris objected, the court required the State to justify its request.

To support the effort to shield the child from facing the defendant, the child's mother testified that her daughter had been "devastated" for nearly three years and remained "afraid to go to the bathroom by herself." She detailed two recent incidents where the child became panicky after thinking that she saw Harris and was scared to ride the elevator at the courthouse for fear of seeing him. She added that her reassurances to her daughter did not seem "to have done any good to this point." She reported that her daughter had been up since 4:00 a.m. that day, had already thrown up once, and kept asking her parents whether Harris would be there and if she would have to see him. Her mother also testified that after her daughter's disclosure, "she's been expressing fear of where he is and what will happen to her if he sees her again." After this proffer,

notwithstanding Harris's objection that a barrier might give more credibility to the child's testimony, the trial court decided to allow a blackboard in the courtroom during her testimony. After that ruling, Harris did not object further or move for a mistrial.

At trial, the child, then seven, testified that Harris had approached her while she was in the bathroom at his mother's house. She testified that while she was on the commode, Steve approached her with his pants down and his hands on "his private." He told her to suck "his private part," but she refused. She testified that he asked her three times, then told her to "go back in there with the other little kids." She testified this happened more than once while she and Steve were alone in the bathroom.

1. Harris now asserts that his constitutional rights were violated due to the presence of the barrier between him and the witness. At trial, however, Harris did not claim a due process/confrontation clause violation based on the barrier, nor did the trial court rule on the issue. Thus Harris has waived this argument on appeal. *Colbert v. State*, 249 Ga. App. 79 (a) (547 SE2d 714) (2001).

2. Harris contends that the trial court erred in denying his motion for mistrial due to irregular juror conduct. He claims that after he established the irregularity, the State failed to rebut the presumption of prejudice that arose in his favor and the trial court erred in refusing to grant a mistrial. See *Mullins v. State*, 241 Ga. App. 553, 555-557 (2) (525 SE2d 770) (1999).

After the jury was selected and impaneled, Harris's sister informed the court about a conversation that she overheard in the ladies' restroom during a break. This sister testified that Jurors No. 5 and No. 6 said, "we don't need to waste any more time; he's guilty because he looks guilty." To investigate the allegations, the trial court conducted separate interviews of the two jurors. Juror No. 5 denied making any comments about the defendant's innocence or guilt and denied overhearing anyone else make any such statement. She testified that she was not biased and still had an open mind. Juror No. 6 also denied making any statement herself but confirmed that a woman not selected for jury service had, in fact, expressed an opinion about the defendant's guilt or innocence. Juror No. 6 testified that the person who made the remarks in the restroom was repeating the same opinions that she had expressed earlier in the courtroom during voir dire. Juror No. 6 stated that the woman not selected "believes that children don't lie and all that," but avowed that she herself was totally impartial. Both jurors expressed their neutrality, and the court exercised its discretion in assessing their demeanor and testimony. See *Speed v. State*, 270 Ga. 688, 691 (7) (512 SE2d 896) (1999). No abuse of that discretion has been shown here.

Harris also claims that the trial court erred in denying his request for an inquiry into the possibility of taint of the other female jurors. In order to set aside a jury verdict, the juror misconduct must have been so prejudicial that the verdict is deemed to be inherently lacking in due process. *Holcomb v. State*, 268 Ga. 100, 103 (2) (485 SE2d 192) (1997). Here, Juror No. 5 denied overhearing anything, while Juror No. 6 testified that nothing was said that had not already been expressed during voir dire, testimony supported by the transcript of that proceeding. See *Arnold v. State*, 243 Ga. App. 118, 122 (2) (532 SE2d 458) (2000). Moreover, Harris's sister admitted that she was not certain that any other jurors selected for the case other than Jurors No. 5 and No. 6 were in the restroom at that time. Since the remarks uttered in the restroom either came from a nonjuror or merely reiterated those made by that nonjuror, we cannot say that the trial court erred in refusing to question the remaining female jurors or denying a mistrial. See *Holcomb*, supra, 268 Ga. at 103; see also *Sims v. State*, 266 Ga. 417, 419-420 (3) (467 SE2d 574) (1996) (juror statements to each other did not involve extrajudicial information or demonstrate that they were deliberating or attempting to persuade each other).

3. Harris asserts that his trial counsel provided ineffective assistance by failing to move for a mistrial after the trial court allowed a blackboard to be placed between him and the witness. Harris claims that the presence of this barrier interfered with the jury's ability to assess the child's credibility and violated his confrontation rights under the state and federal constitutions.

"The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U. S. 836, 845 (II) (110 SC 3157, 111 LE2d 666) (1990). In that case, the U. S. Supreme Court upheld the constitutionality of a Maryland statute allowing a child witness to testify via one-way closed circuit television, provided that the trial court determined that certain conditions are met. Id. at 860. However, the Court added that it had never recognized an *"absolute* right to a face-to-face meeting" with witnesses against a defendant. (Emphasis in original.) Id. at 844 (II). In *Richardson v. State*, 276 Ga. 639, 641 (2) (581 SE2d 528) (2003), our own Supreme Court noted that the Confrontation Clause does not "compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere." (Citations and punctuation omitted.) Id. The court added, however, that the defendant is entitled to "a face-to-face meeting with witnesses appearing before the trier of fact," including "an unobstructed view of them while they were on the stand." (Citation and punctuation omitted.) Id. at 642 (2).

Here, the record includes evidence from Harris's own trial counsel that Harris could see the child witness as she testified. At the hearing on his motion for new trial, Harris's trial counsel testified that "the board was placed in a position where my client could see the witness and the jury." Counsel also testified that the child could see Harris, though not as easily as she might have without the blackboard. Harris contradicted this testimony, saying that "I never seen [sic] who testified against me as far as a child," that "they put the blackboard where I couldn't see her and she couldn't see me," and that he could only hear the child's voice.

At the hearing on a motion for new trial, it is the function of the trial court to decide the credibility of witnesses and to resolve any conflicts in the testimony. *Mobley v. State*, 264 Ga. 854, 856 (2) (452 SE2d 500) (1995). The trial court apparently resolved the conflicts in the testimony concerning the position of the blackboard adversely to Harris. See *Richardson*, supra, 276 Ga. at 642 (refusing to rule on Confrontation Clause violation where record was unclear, and ordering new trial on other grounds).

An ineffectiveness claim requires not only establishing that one's trial counsel's performance was deficient, but also that the deficient performance was so prejudicial as to create a reasonable probability of a different outcome. *Rucker v. State*, 268 Ga. 406, 407 (2) (489 SE2d 844) (1997). Here, Harris has failed to establish that trial counsel's failure to move for a mistrial as a result of the trial court's ruling on the blackboard amounted to a deficient performance, let alone that a mistrial would have been granted had he so moved. The trial court's finding that Harris was not denied effective assistance is not clearly erroneous and so must be affirmed. *Jones v. State*, 236 Ga. App. 716, 718 (3) (513 SE2d 254) (1999).

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED AUGUST 30, 2004.

*Yolanda T. Rolland*, for appellant.

*Paul L. Howard, Jr., District Attorney, Christopher M. Quinn, Assistant District Attorney*, for appellee.