## A10A0969. OVERSTREET v. THE STATE.
### (696 SE2d 114)

JOHNSON, Judge.

A jury found Johnny Overstreet, Jr., guilty of seven counts of armed robbery, four counts of kidnapping, six counts of aggravated assault, three counts of burglary, twelve counts of possession of a firearm during the commission of a crime, and three counts of possession of a knife during the commission of a crime. The trial court entered judgments of conviction and denied Overstreet's motion for a new trial. Overstreet appeals, claiming the verdict was "strongly against the weight of the evidence" and that the trial court erred in (i) allowing the state to present evidence of his pre-trial confession, (ii) refusing to conduct an inquiry into the possibility that one of the jurors may have overheard a statement made to his trial counsel, (iii) allowing testimony regarding his alleged involvement in robberies committed in another county, (iv) improperly inducing him to confess to his commission of the crimes during the sentencing hearing, and (v) holding that he failed to establish ineffective assistance of counsel. We find no reversible error and affirm.

Construed most strongly in support of the verdict,[1] the evidence shows that between March 10 and April 14, 2006, armed robberies occurred at a Church's Chicken, Waffle King, Burger King, and two separate Wendy's restaurants in Richmond County. The robberies all took place around midnight and were perpetrated by two masked men (except for the Waffle King robbery, which was perpetrated by three masked men) who were described by many of the witnesses as wearing gloves and wielding either firearms or a knife, ordering them to either lie on the floor or to move to different locations within the store, and taking money from safes and cash registers.

The incident at Burger King, which occurred on April 14, 2006,

---

[1] *Reid v. State*, 286 Ga. 484, 485 (1) (690 SE2d 177) (2010).

was recorded on a surveillance videotape. That tape showed Timothy Wright, who was one of the employees present during the robbery, open the back door of the restaurant immediately before the masked men used that door to enter. In addition, other employees of the Burger King observed that Wright had acted unusually that evening and had been "always" on a cell phone, and one employee reported that one of the robbers was or might have been Israel McCain, who attended high school with Wright.

After Wright provided a statement denying his involvement but implicating McCain, police investigators questioned McCain and determined that he had an alibi for the evening of the Burger King incident. When the investigators questioned Wright again, he admitted his role in the robbery. Wright told police that he (i) allowed Kenneth Walker and Overstreet to use his car to drive to the Burger King to commit the robbery, (ii) used Walker's cell phone to stay in contact with Walker and Overstreet and let them know when they should arrive, and (iii) opened the rear door of the restaurant when he knew Walker and Overstreet were ready to enter.

Overstreet was arrested for his involvement in the Burger King robbery and provided a statement confirming the description of the robbery given by Wright. Overstreet also admitted to his involvement in robbing the Church's Chicken, the Waffle King, and one of the Wendy's restaurants. While the investigators testified that Overstreet explicitly denied participation in the other Wendy's robbery, Overstreet testified that they did not ask him about it.

1. Overstreet claims that the verdict rendered against him "is strongly against the weight of the evidence, entitling [him] to a new trial." However, such an argument may only be made to a trial court in a motion for new trial and not to this Court on appeal; and we have no discretion to grant a new trial based on such a claim.[2] Nevertheless, we review this claim as if it were challenging the sufficiency of the evidence used to convict Overstreet.[3]

When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence.[4] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[5]

---

[2] *Tucker v. State*, 299 Ga. App. 278, 278-279 (1) (683 SE2d 356) (2009).

[3] Id. at 279 (1).

[4] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[5] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Here, Overstreet confessed to his participation in the robberies at the Burger King, Church's Chicken, Waffle King, and one of the Wendy's restaurants. Walker testified that he and Overstreet were the perpetrators of each of those robberies, and Derrick Garrett testified that Overstreet enlisted his assistance in robbing the other Wendy's restaurant. In addition, employees of each of the restaurants provided evidence of the numerous crimes committed during the robberies.

Overstreet claims that Walker and Garrett were not reliable witnesses, and he points to his own testimony in which he explained why he provided a statement confessing to most of the robberies and asserted that he must have "blacked out during the statement" because he did not recall providing it. However, the jury, as judges of the credibility of the witnesses, was authorized to believe Overstreet's former co-defendants and disbelieve his claims of innocence.[6] As a result, the evidence authorized the jury to conclude that Overstreet was guilty beyond a reasonable doubt of the crimes of which he was convicted.[7]

2. Overstreet claims that the trial court erred in holding that his arrest was supported by probable cause and that his subsequent confession could be used at trial. Overstreet properly states that "a confession obtained through custodial interrogation after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is sufficiently an act of free will to purge the primary taint."[8] In determining whether Overstreet's warrantless arrest was valid, we must consider whether, "at the time the arrest was made, the facts and circumstances within the knowledge of the arresting officers and of which they had reasonable, trustworthy information were sufficient to warrant a prudent [person] in believing that the accused had committed . . . an offense."[9]

While Overstreet asserts that he was arrested "on an evidentiary fishing expedition[,]" the record shows that police had probable cause to believe Wright's statement admitting his involvement in the Burger King robbery and implicating Overstreet.

> When one makes an admission against his own penal interest, he tends to be telling the truth. . . . One who knows the police are already in a position to charge him with a

---

[6] *Stubbs v. State*, 201 Ga. App. 546, 547 (1) (411 SE2d 525) (1991).

[7] See *Zackery v. State*, 286 Ga. 399, 400 (1) (688 SE2d 354) (2010).

[8] (Citation and punctuation omitted.) *Taylor v. Alabama*, 457 U. S. 687, 690 (102 SC 2664, 73 LE2d 314) (1982).

[9] *State v. Gunter*, 249 Ga. App. 802, 804 (549 SE2d 771) (2001).

serious crime will not likely undertake to divert the police down blind alleys. We thus are satisfied that an admission against penal interest may form the basis for a [person's] conclusion that an informant is reliable.[10]

Here, not only did Wright's statement admit his own involvement in the robbery, which he had previously denied, but his admission that he used Walker's cell phone to stay in contact with Walker and Overstreet about the best time to commit the robbery was consistent with reports from his fellow employees that he spent much of his shift on a cell phone; and his statement that he opened the back door of the restaurant so Walker and Overstreet could enter was consistent with the evidence provided by the surveillance videotape. Finally, there was no question regarding Wright's ability to identify Overstreet given that they attended high school together.[11] As a result, Wright's statement provided police investigators with probable cause to arrest Overstreet, and the trial court did not err in refusing to exclude his subsequent confession.

3. Overstreet claims that the trial court erred in failing to ask the jurors if they heard a statement made to his trial counsel after the jury was struck but prior to the presentation of any evidence. During a lunch recess, Overstreet's trial counsel claimed that the attorney for one of Overstreet's alleged accomplices asked him "what are you going to say in opening?" as he walked past the courthouse elevators. Overstreet's trial counsel claimed that the question was asked "in a joking, sarcastic manner" and that a person whom he "believe[d] to be a juror kind of turned and looked back when that was said." The trial court refused Overstreet's request to conduct an inquiry into the possibility that one of the jurors had been tainted by overhearing the statement.

"[I]n the absence of clear evidence to the contrary, qualified jurors, under oath, are presumed to follow the instructions and procedural directives of the trial court."[12] Here, it was not clear that the statement was overheard by a juror; nor does it seem likely that a juror overhearing the statement would be tainted in his or her ability to properly consider the evidence presented at trial. The trial court did not err, therefore, in refusing to question the jurors regarding the incident.[13]

---

[10] *Graddy v. State*, 277 Ga. 765, 766 (1) (596 SE2d 109) (2004).

[11] See *Devega v. State*, 286 Ga. 448, 451 (4) (b) (689 SE2d 293) (2010) (police officers had probable cause to believe informant who knew defendant personally and was present when defendant arranged to commit crime).

[12] *Harris v. State*, 202 Ga. App. 618, 620 (3) (b) (414 SE2d 919) (1992).

[13] See *Harris v. State*, 269 Ga. App. 316, 319 (2) (604 SE2d 565) (2004).

4. Overstreet alleges that the trial court erred in allowing Garrett to testify as to Overstreet's involvement in two robberies in Columbia County because the trial court had not conducted a similar transaction hearing pursuant to Uniform Superior Court Rule 31.3. We have previously held, however, that such a hearing is not necessary where the other crimes make up "a relevant part of [the defendant's] criminal scheme" or a "continuing criminal enterprise."[14]

Pretermitting whether the trial court should have conducted a Rule 31.1 hearing, we find that it is highly unlikely that this portion of Garrett's testimony contributed to the verdict.[15] Here, after testifying as to being approached by Overstreet to conduct the first Wendy's robbery, Garrett testified that he and Overstreet were also involved in robberies of a Krystal and another Wendy's restaurant in Columbia County within the following few weeks. As previously described, however, Overstreet confessed to committing all but one of the Richmond County robberies; and Walker and Garrett described his involvement in the robberies at each of the Richmond County restaurants for which he was being tried. Based on this overwhelming evidence, it is highly unlikely that Garrett's limited testimony regarding the Columbia County robberies contributed to the verdict, and any error in admitting it was harmless and does not require reversal.[16]

5. Overstreet also claims that the trial court erred in improperly questioning him during the sentencing hearing. During that hearing, which was conducted several weeks after Overstreet was convicted, the trial court asked Overstreet if he was "prepared to accept responsibility for [his] actions[.]" When Overstreet responded affirmatively, the trial court asked him "[w]ho were the leaders in [committing the crimes,]" and Overstreet told him that "nobody [was] really the leader. It was just all our ideas." While Overstreet claims that this questioning was improper, it is well established that "the defendant's remorse or lack thereof is a permissible area of inquiry during sentencing."[17]

6. Finally, Overstreet claims that his trial counsel was ineffective in failing to (i) adequately prepare for trial, (ii) properly call alibi witnesses, (iii) sufficiently cross-examine one of the state's witnesses and (iv) object to the state's closing argument. To prevail on a claim of ineffective assistance of counsel, Overstreet must show that his

---

[14] *Horner v. State*, 257 Ga. App. 12, 13-14 (1) (570 SE2d 94) (2002).

[15] *Moore v. State*, 301 Ga. App. 220, 225 (3) (687 SE2d 259) (2009).

[16] Id.

[17] (Citation and punctuation omitted.) *McGuire v. State*, 243 Ga. App. 899, 902 (5) (534 SE2d 549) (2000).

counsel's performance was deficient and that the deficiency so prejudiced him that a reasonable likelihood exists that but for counsel's deficiency, the outcome of the trial would have been different.[18]

To succeed in his claim, Overstreet

> must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. We will not reverse on the basis of ineffective assistance of counsel unless trial counsel's conduct so undermined the proper functioning of the adversarial process that the trial could not reliably have produced a just result. [Overstreet] must show that the trial court clearly erred and that such error was harmful in deciding whether his trial counsel was ineffective. Absent clear error and harm, we will affirm the trial court's finding that [Overstreet] did not receive ineffective assistance of counsel.[19]

First, Overstreet claims that his trial counsel inadequately prepared for trial and did not sufficiently meet with him prior to trial. However, Overstreet's trial counsel disputed much of Overstreet's testimony regarding pre-trial activity, and, in any event, "[t]here exists no magic amount of time which counsel must spend in actual conference with his client."[20] Given that some evidence supported the trial court's finding that trial counsel spent sufficient time investigating and preparing the case, we cannot say the trial court clearly erred in holding that Overstreet failed to establish ineffective assistance on this ground.[21]

We likewise find that the trial court did not clearly err in holding that Overstreet failed to establish ineffective assistance on the other grounds that he has raised. While Overstreet claims that his trial counsel should have called his 14-year-old cousin to testify that he was playing video games with her at the time that the Burger King was being robbed, his trial counsel recalled Overstreet telling him prior to trial that "he had no other witnesses." As for Overstreet's argument that his trial counsel failed to properly cross-examine Walker regarding the dead docketing of certain charges against him,

---

[18] See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[19] (Citations and punctuation omitted.) *Mency v. State*, 228 Ga. App. 640, 642 (2) (492 SE2d 692) (1997).

[20] (Citation and punctuation omitted.) *Kilby v. State*, 289 Ga. App. 457, 460 (3) (657 SE2d 567) (2008).

[21] Id.

trial counsel asked Walker numerous questions regarding his plea agreement with the state and his willingness to lie in order to receive a reduced sentence.

Finally, Overstreet alleges that his trial counsel should have objected during closing argument when the prosecuting attorney stated that "[i]f you think he did it, then he's guilty" and asked jurors "what would you do?" when describing how the witnesses did not resist providing the armed robbers with cash. However, the trial court advised the jury that statements made by attorneys in closing argument could not be considered as evidence. Moreover, neither Overstreet's reference to statements made during closing argument, nor any of his other claims regarding ineffective assistance, establish a reasonable probability that the outcome of the trial would have differed but for trial counsel's alleged deficient performance. As a result, this enumeration of error is without merit.[22]

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED JUNE 1, 2010.

*John R. Taylor*, for appellant.
*Ashley Wright, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.

---

[22] See *Killings v. State*, 296 Ga. App. 869, 872-874 (3) (676 SE2d 31) (2009).