**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**August 12, 2014**

# In the Court of Appeals of Georgia

A14A1223. JOHNSON v. THE STATE.                    JE-044C

ELLINGTON, Presiding Judge.

A Fulton County jury found Elbert Johnson guilty beyond a reasonable doubt of aggravated child molestation, OCGA § 16-6-4 (c); and two counts of child molestation, OCGA § 16-6-4 (a) (1). Johnson appeals from the denial of his motion for a new trial, contending that he received ineffective assistance of counsel. Finding no reversible error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows the following. In August 2006, when the victim was nine years old, Johnson was dating her mother and living with her family. One night, after Johnson had been out

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

drinking, he returned home to find the victim and her younger sister sleeping in the bed he and her mother shared. The victim woke and started to go back to her room, but Johnson told her that she could stay in his bed. The victim lay back down on the bed. Johnson then got in bed with the victim and her sister, pushed the victim's sister to the end of the bed, lay between them, removed the victim's shorts, and began rubbing the victim's leg. Johnson rubbed his bare penis on the victim's genital area over her underwear. He also placed his penis inside the victim's mouth. Johnson stopped when the victim got out of the bed and ran into the bathroom.

Approximately two years later, in October or November of 2008, the victim, her family, and Johnson were living in another residence. One night, Johnson came into the victim's room while she was asleep. The victim felt someone sit on the bed, and she awoke to find that it was Johnson. Johnson began stroking the victim's leg and put his hand on the victim's genital area. After touching the victim for a brief period, he stopped and left the room.

On another night in 2008, Johnson came home after a night of drinking alcohol and got in bed with the victim's mother. In the dark bedroom, the victim's mother heard Johnson crying. She asked him what was wrong and he responded with statements like, "I didn't mean to do it," "she didn't deserve it," and "she's just a

2

child." The victim's mother got up, turned the light on, and saw that Johnson was asleep. Johnson stopped crying and the victim's mother went back to sleep.

The next morning, the victim's mother recounted to Johnson his crying and the statements he made, and Johnson claimed that he did not remember any of it. A few days later, the victim's mother asked the victim if Johnson had ever touched her in any inappropriate way, and the victim said that he had. The victim's mother immediately telephoned Johnson and told him that he needed to come home immediately because she needed to talk to him.

While Johnson was on his way home, the victim's mother telephoned Johnson's mother and told her what the victim had said. Johnson's mother said that she did not believe that Johnson molested the victim. She asked to speak with the victim, then asked the victim whether she was just mad at Johnson. The victim denied being mad or upset. Shortly after Johnson's mother hung up the phone, Johnson's sister called the victim's mother and asked the victim the same questions.

Johnson came home, and the victim's mother, with the victim present, confronted him with the victim's outcry. Johnson denied molesting her. The victim looked at Johnson and insisted that he had molested her, but Johnson continued to

deny it. Eventually the argument stopped, and the victim, the victim's mother, and Johnson said nothing else to each other about the alleged molestation.

A few years later, in a diary entry dated May 26, 2011, the victim wrote that Johnson had "raped [her] twice," that she no longer felt comfortable calling him "daddy," and that she could not forgive him for what he did to her. Shortly thereafter, in early June, the victim's mother read the diary entry. On June 4, 2011, she reported to the police that Johnson had molested the victim.

The State indicted Johnson in three counts, charging him with the following offenses: in Count 1, committing aggravated child molestation "by placing [his] male sex organ into the mouth of [the victim]"; in Count 2, committing child molestation "by rubbing [his] male sex organ against [the victim's] female sex organ"; and, in Count 3, committing child molestation "by rubbing [the victim's] female sex organ with [his] hand[.]" The jury found Johnson guilty beyond a reasonable doubt on all three counts.

Johnson's appellate counsel moved for a new trial on the grounds of ineffective assistance of counsel. Johnson asserted that trial counsel was ineffective in that, among other things, he "failed to interview key witnesses and family members." At the motion hearing, Johnson presented the testimony of his mother and sister, neither

4

of whom had testified at trial. Johnson's mother testified that, in the summer of 2006 or 2007, the victim referred to Johnson only as "daddy" and Johnson and the victim appeared to have a close relationship. The mother, however, testified that she did not get an opportunity to see their interactions after the summer of 2006 or 2007. Johnson's sister also testified that she periodically stayed at Johnson's home for brief visits between 2006 and 2011 and that, during those visits, the victim referred to Johnson as "daddy" and Johnson and the victim appeared to have a good relationship.

Johnson's mother and sister also testified that they never had telephone conversations with the victim after the molestations. This testimony was contrary to the trial testimony of the victim's mother, who testified that the victim had a telephone conversation with Johnson's mother and sister about the molestation accusations sometime in 2008. Both witnesses admitted that they never lived with the victim and had no personal knowledge about whether the molestations had occurred.

During the same motion for new trial hearing, trial counsel testified that, before trial, he consulted with Johnson and investigated the case. Pursuant to that investigation, he realized "that nobody had any knowledge as far as any potential eyewitnesses. Nobody had any knowledge about someone who might have been present there who could say, I was there during this time and I can say in an

affirmative manner that this misconduct never took place. There wasn't anything like that." Trial counsel testified further that, due to the lack of eyewitnesses, his strategy at trial was to show the jury that the evidence presented by the State consisted only of the victim's testimony, that the victim was not credible, that there was no physical or forensic evidence to support her claims, and that, as a result, there was a reasonable doubt as to whether Johnson was guilty. Based upon the testimony presented, the trial court concluded that trial counsel's representation was not deficient, nor was Johnson prejudiced by counsel's strategic decisions, and it denied Johnson's motion for a new trial.

On appeal, Johnson contends that his trial counsel's performance was deficient in that he failed to properly investigate the case[2] and failed to call Johnson's mother and sister as witnesses at trial.

---

[2] Although Johnson contends that his trial counsel should have objected when the State tendered copies of pages from the victim's diary, should have asked more questions during voir dire of the potential jurors, and should have conducted a more thorough cross-examination of the State's witnesses, he has failed to show that counsel's conduct resulted in the improper admission of probative evidence or the improper exclusion of exculpatory evidence, or that these alleged errors prejudiced his defense in any other way. "Absent clear error and [resulting] harm, we will affirm the trial court's finding that [Johnson] did not receive ineffective assistance of counsel." (Punctuation and footnote omitted.) *Overstreet v. State*, 304 Ga. App. 275, 280 (6) (696 SE2d 114) (2010).

6

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Lester v. State*, 278 Ga. App. 247, 252 (5) (628 SE2d 674) (2006).

Johnson has failed to show that trial counsel's performance was deficient. The record shows that counsel consulted Johnson before trial and investigated the case. He concluded that there were no eyewitnesses to the molestations. Neither Johnson's mother nor his sister, for example, lived with Johnson and the victim, nor did they have any knowledge as to whether the molestations occurred. Trial counsel thus had

7

no reason to believe that Johnson's mother and sister had anything to contribute to the case; therefore, he made the reasonable decision not to call them as witnesses. Rather, he emphasized the lack of credible evidence against Johnson. This decision was a valid trial strategy, and it does not constitute grounds for a new trial. See *Sweet v. State*, 278 Ga. 320, 323-324 (3) (602 SE2d 603) (2004).

Furthermore, even if trial counsel's decision not to call Johnson's mother and sister as witnesses was error, Johnson has failed to show that trial counsel's error so prejudiced him that there is a reasonable likelihood that, but for the error, the outcome of the trial would have been different. Contrary to Johnson's assertions, his mother's testimony that the victim called Johnson "daddy" and appeared to have a close relationship with him during the summer of 2006 or 2007 has no bearing on the merits of this case. The first alleged molestation occurred in August 2006, and Johnson's mother testified that she had not seen Johnson interact with the victim since the summer of 2006 or 2007. Thus, it is possible that Johnson's mother has not witnessed any interactions between Johnson and the victim since the first alleged molestation in August 2006, and it is *certain* that she has not witnessed their interactions since the second alleged molestation, which occurred in 2008. Johnson's mother's testimony on this issue, therefore, is irrelevant.

8

To the extent that Johnson's sister's testimony that the victim called Johnson "daddy" between 2006 and 2011 conflicts with the victim's May 2011 diary entry, in which she wrote that she no longer felt comfortable calling him "daddy," this issue is tangential to the ultimate question to be decided in this case, i.e., whether the acts of molestation actually occurred.

Furthermore, given the victim's specific testimony about the molestations, Johnson has failed to show a reasonable likelihood that, had the jury heard the testimony of his mother and sister on this purely collateral issue, the outcome of the trial would have been different. It is axiomatic that the testimony of a single witness is sufficient to prove the elements of the crime charged. See former OCGA § 24-4-8[3]; *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007). This rule is often applicable to child molestation cases where, as here, the victim and the defendant are the only people present when the alleged molestation occurs. See, e.g., *Malone v. State*, 277 Ga. App. 694, 696 (1) (627 SE2d 378) (2006) ("The testimony

---

[3] The trial in this case took place in May 2012. Although the Georgia General Assembly repealed the existing Evidence Code in its entirety and replaced it with a new Evidence Code in 2011, the provisions of the new Code did not become effective until January 1, 2013, and apply to any motion, hearing or trial commenced on or after such date. Ga. L. 2011, p. 99, §§ 1, 101. Pursuant to that legislative act, the relevant provision of former OCGA § 24-4-8 has been reenacted as OCGA § 24-14-8.

of the child molestation victim alone was sufficient to authorize the jury to find that [the defendant] committed the acts claimed by her and to infer that he acted with the intent to arouse or satisfy his and her sexual desires.") (footnotes omitted).

The hearing testimony of Johnson's mother and sister that they never spoke on the phone with the victim after the alleged molestations contradicts the victim's mother's testimony, but it does not contradict the victim's testimony. Because their testimony does not contradict the victim's testimony, and because it is unrelated to whether the alleged molestations actually occurred, Johnson has failed to show that he was prejudiced by counsel's failure to present the testimony at trial.

Accordingly, under the circumstances presented, we find no error in the trial court's conclusion that Johnson failed to meet his burden of showing that his trial counsel's representation was deficient or that he was prejudiced thereby, nor in the court's denial of Johnson's motion for new trial based upon that conclusion.

*Judgment affirmed. Phipps, C. J., and McMillian, J., concur.*