# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-KA-00740-COA

**JEFFREY CLYDE PITTS**                                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                    **APPELLEE**

DATE OF JUDGMENT:             02/11/2021
TRIAL JUDGE:                  HON. JOHN H. EMFINGER
COURT FROM WHICH APPEALED:    RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:      J. EDWARD RAINER
                              KIMBERLY MARIE PHILLIPS
ATTORNEYS FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                              BY: LAUREN GABRIELLE CANTRELL
                                  ALEXANDRA RODU ROSENBLATT
DISTRICT ATTORNEY:            JOHN K. BRAMLETT JR.
NATURE OF THE CASE:           CRIMINAL - FELONY
DISPOSITION:                  AFFIRMED - 01/31/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     Jeffrey Pitts was indicted for the sexual battery of his daughter A.G.C., who was four years old at the time of the offense. After a trial, Pitts was sentenced to thirty years in the custody of the Mississippi Department of Corrections (MDOC) with twenty years to serve and ten years suspended, and ordered to register as a sex offender. Pitts appeals, raising numerous issues. For the reasons discussed below, we affirm the conviction and sentence.

## FACTS

¶2.     A.G.C. is the child of K.C. and Jeffrey Pitts.[1] A.G.C. spent the weekend of May 1-3,

---

[1] We use initials to protect the minor's identity.

2020, with Pitts. After returning home, A.G.C. told her grandmother T.C. that she "saw daddy's gina" and "daddy's gina is this big" while using her hands to illustrate. T.C. had A.G.C. repeat the information to K.C. and A.G.C. told K.C. that her "daddy put his finger in [her] vagina, in [her] 'gina and in [her] bootie and he made it go really fast." K.C. filed a report online with Child Protection Services (CPS) and with the Richland Police Department. A.G.C. was interviewed by CPS and underwent a forensic interview.

¶3. A Rankin County grand jury indicted Pitts for one count of sexual battery under Mississippi Code Annotated section 97-3-95 occurring between May 1-3, 2020. A jury trial was held February 1-4, 2021.

¶4. The State noticed its intent to elicit hearsay testimony under the tender years exception. MRE 803(25). The trial court held two hearings to determine whether T.C. and K.C. could testify as to A.G.C.'s disclosure to them. The court considered the tender years factors under the Mississippi Rules of Evidence and ultimately found the statements admissible. The court reasoned the child "had no apparent motive to lie," and there was "nothing here about the general character of the declaring that would weigh toward excluding the testimony." The court continued that the mother and grandmother heard the initial statements, the allegations were "made within days after the alleged event," and the statements were made spontaneously to the grandmother. The trial court found "the credibility of both the mother and the grandmother to be substantial that these statements were made to them." The court found that "in considering all these things, almost all of these factors weigh in factor and provides substantial indicia of reliability and I find that these

2

statements should be admissible."

¶5.     The State noticed its intent to elicit Rule 404(b) testimony of other bad acts committed by the Defendant. The court held a pre-trial hearing on the issue. The State explained that A.G.C. would testify to other sexual acts Pitts committed in addition to those in the indictment, to show Pitts' "motive, opportunity, intent, preparation, and plan." The State argued the Mississippi Supreme Court "has held that evidence of sexual relations between the Defendant and the victim is admissible to show the lustful, lascivious disposition of the Defendant toward that particular victim." Further, the State explained its intent to have Pitts' other daughter, A.P., testify that he also committed sexual acts toward her. However, this evidence was never introduced at trial. No other instances of sexual acts outside the indictment were mentioned, and A.P. did not testify.

¶6.     Pitts sent to the State notice of his intent to call two expert witnesses: Dr. Mark Webb, a psychiatrist, and Dr. Gerald O'Brien, a forensic psychologist. The State filed a motion in limine to exclude both witnesses. First, the State argued for the exclusion of both witnesses for discovery violations because the reports were received by the State "just a few days" before trial. Second, the State argued the experts "do not meet the requirements of M.R.E. 702 and experts are not allowed to opine on the credibility of witnesses."

¶7.     During the hearing, both doctors were accepted and admitted as experts in their respective fields of practice. Dr. O'Brien testified that he administered the "Abel and Becker" assessment, which is a self-reporting test used to determine whether Pitts had "unusual thoughts outside the normal range, particularly regarding sexual behavior with

children." Dr. O'Brien testified that Pitts denied having any unusual or inappropriate thoughts about children. Dr. O'Brien concluded that Pitts "did not meet the criteria for any significant mental disorder including paraphilic disorder such as sexual focus on children." Dr. O'Brien admitted he has been excluded in courts around the state from offering this type of evidence. After the judge asked, "[Y]ou're not saying that this man didn't molest this child, right?" Dr. O'Brien responded, "I can't speak to that. I can say that in my opinion he's not a person that's likely to do such a thing." Dr. O'Brien testified that the Abel and Becker test, "when used alone," was not widely accepted in the psychological community. The trial court noted that Dr. O'Brien's exclusion in a previous case had been upheld by the Mississippi Court of Appeals.[2]

¶8.     The second expert, Dr. Mark Webb, testified that he used Dr. O'Brien's report to determine that Pitts "did not exhibit the characteristics of someone who was a sexual predator or a pedophile." Dr. Webb stated that the charges against Pitts "appear to be invalid because, within a reasonable degree of psychiatric certainty, Pitts did not possess the qualities or characteristics of someone who would sexually abuse a child." Dr. Webb admitted that he could not determine within a reasonable degree of certainty that Pitts did not commit sexual battery against A.G.C.

¶9.     The trial court excluded both experts' testimony. The trial court stated there were clear discovery violations in failure to disclose the reports earlier.[3] Further, the judge reasoned, "I

---

[2] *Earnest v. State*, 805 So. 2d 599, 606 (¶24) (Miss. Ct. App. 2002).

[3] Dr. O'Brien saw Pitts in his office on October 27, 2020, but dated his assessment January 19, 2021. Dr. Webb listed his "dates of assessment" as October 8, 12, and 19, 2020,

4

do not believe that these opinions meet the 702 standard in that they are not the product of reliable principles. The opinions were the products of self reports and an expert cannot render an opinion of the credibility of a witness; yet, that's exactly what these doctors purported to do. . . . Further, the doctors testified that there is no acceptable profile of a sex offender or a scientifically acceptable uniform diagnosis." Moreover, the judge continued, "those characteristics that are used to diagnose and treat an admitted offender and they're not geared toward determining whether a particular person committed an offense on a particular day." The trial court found that this testimony was not helpful to the jury and that any probative value was substantially outweighed by the danger of unfair prejudice.

¶10.    At trial, the State's first witness was Officer Ryan Halbert who testified that on May 9, 2020, he met with K.C. and took a report of Pitts' alleged sexual abuse of A.G.C. The State then called Detective Amanda Brown who testified that she took over the investigation from Officer Halbert and scheduled a forensic interview for A.G.C.

¶11.    A.G.C. testified next at trial. Before her testimony, the State requested a screen be placed in front of the victim to protect her from the trauma of having to look at her father while she testified. The court granted the motion and allowed the screen to be erected, but the court also required a computer monitor be arranged so Pitts could see A.G.C. For brevity, the facts of this hearing will be discussed further in the analysis.

¶12.    On direct examination, A.G.C. was asked if she remembered her "daddy" touching her anywhere. A.G.C. responded, "[I]n my bootie and my vagina . . .with his finger." She

and January 28, 2021. Dr. O'Brien's report was provided to the State on January 27, 2021, and Dr. Webb's report was provided on January 29, 2021.

5

testified this touching happened "a few times." The State asked, "[S]o when you said your daddy put his fingers inside of your vagina and your bootie, is that a different time than when he put Butt Paste on you?" A.G.C. responded by nodding her head affirmatively. A.G.C. testified that no one else had ever put a finger inside her vagina. A.G.C. further testified that no one was telling her what to say.

¶13.    The State's next witness was A.G.C.'s grandmother, T.C., who testified that on May 8, 2020, she had the following conversation with A.G.C.:

> She said, "I saw daddy's 'gina," which doesn't have a term for penis so she used the word 'gina, meaning vagina. "I saw daddy's 'gina." I remained calm. I didn't ask her any questions. I just, "Oh, okay." But then she said, "Daddy's 'gina this big," using her finger to show me daddy's 'gina this big. Again, I didn't ask any questions. I remained calm. I just said, "Okay." Then she went on with another topic. That was all she said about Jeff at that time.

T.C. testified she had A.G.C. repeat the allegation to her mother, K.C.

¶14.    K.C. was the State's final witness. She recalled A.G.C.'s disclosure to her, "and she then proceeded to kind of tell the same story, that she saw daddy's vagina and it was this big. And at this point, she -- she was demonstrating to me and she -- she put her -- her elbow in between her legs and she swung her arm back and forth and she says it was like an elephant trunk." K.C. testified she then made a report with CPS and the Richland Police Department.

¶15.    Pitts called his mother J.P. as a witness. J.P. testified that she was in the home with Pitts and A.G.C. during the weekend of May 1-3, 2020. J.P. testified she saw the Butt Paste set out in the bathroom. As to the allegation of sexual abuse, J.P. stated, "[M]y son loved his girls and I loved my grandchildren and if someone, even . . . even if I had . . . I want to say this. If I would think anything like that would happen, as much as my son loves his children,

6

we'd be having a funeral today instead of a trial."

¶16. Pitts called Annette Bonds as his next witness. Bonds testified she lived next door to Pitts and his mother. Bonds testified that during the weekend in question, she saw "nothing" out of the ordinary. Pitts then called his aunt Rebecca, who, when asked about Pitts, stated, "I believe in all my heart he is a good father and I know he loves his children with no doubt."

¶17. Pitts testified at trial and said that the child support he provided was an "honor system type thing" not being enforced by any court order. Pitts testified that during the weekend in question, he was watching television with A.G.C. and his other daughter. Pitts testified that he then asked A.G.C., "Why are you keeping your hands in your pants?" She responded that her "vagina itches really bad," so Pitts obtained some Butt Paste for her. Pitts explained how he applied it:

> [I] basically just took the . . . my hand. I opened it, slathered some on and just went on the inside of her crease. Because when she was scratching, it was not her vagina, like anywhere near the opening. It was the side of her leg and whatever that little part is that connects to the little mound right there. So all I did was take the Butt Paste, smear it on and up kind of over her mound and then down the side of her leg.

¶18. Pitts testified when he dropped A.G.C. off with K.C. he informed K.C. "[Y]ou may want to look at her front" and alerted her to the itching and Butt Paste application. When asked on direct examination if Pitts had ever inappropriately touched any parts of A.G.C., Pitts replied, "[A]bsolutely not."

¶19. Pitts then called Dequian Johnson to the stand. Johnson testified he was employed at the Child Advocacy Center (CAC) and conducted a forensic interview with A.G.C. on May 11, 2020. Pitts introduced into evidence the videotaped forensic interview of A.G.C. It was

7

published to the jury.

¶20.    Pitts then called his cousin Penny Foster as a witness. When asked if she had any concerns about Pitts being around children, Foster stated, "I have never observed anything that's concerning or inappropriate. He's a good parent when he's around my children and cousins at family events." Pitts also called his friend John Yoakum, who testified that Pitts was "one of the best guys" he had ever known and stated he had never observed Pitts mistreating children. Pitts also called his cousin Tara Clark as a witness. She confirmed that she had never observed Pitts mistreating children and stated that he was a "very differential caring person."

¶21.    The jury found Pitts guilty of sexual battery. Pitts was sentenced to a term of thirty years in the custody of MDOC, with twenty years to serve and ten years suspended. Pitts was also ordered to register as a sex offender. Pitts filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial, which was denied. He then appealed, arguing the screen used during A.G.C.'s testimony violated his constitutional right to confront the witness and alleging errors in evidentiary rulings. He asks this Court to reverse and remand for a new trial.

## STANDARD OF REVIEW

¶22.    We will reverse the trial court's denial of a motion for a new trial only if the trial court abused its discretion by doing so. *Turner v. State*, 291 So. 3d 376, 384 (¶22) (Miss. Ct. App. 2020). Our role as an appellate court is to "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of

the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.* (citing *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017)). "We do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* "When addressing a statute's constitutionality, we apply a de novo standard of review, bearing in mind (1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts are resolved in favor of a statute's validity." *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 243-44 (¶3) (Miss. 2012). This Court reviews a trial court's ruling on discovery violations for an abuse of discretion. *Turner v. State*, 292 So. 3d 1006, 1016 (¶23) (Miss. Ct. App. 2020) (citing *Conley v. State*, 790 So. 2d 773, 782 (¶20) (Miss. 2001)).

## ANALYSIS

### I.   Did the construction of a screen to prevent the child victim from seeing Pitts violate the United States Constitution?

¶23.   Prior to the victim's testimony, the State requested that pursuant to Mississippi Code Annotated 99-43-101(2)(g) (Supp. 2018), the trial court would permit a screen to be placed in an effort to obscure A.G.C.'s view of Pitts while she was testifying. The defense objected, stating that "there's been no proof of why it is necessary" and objected to the constitutionality of the statute. The defense argued that the placement of a screen violated Pitts' right to confront the witness.[4] The State argued that under section 99-43-101(2)(g) "the statute states

---

[4] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI; *accord* Miss. Const. art 3, § 26.

9

that she shall have that right and I'm not required to put on any proof that she be scared of the defendant." When the trial judge required the State to nevertheless explain why the screen was necessary in this case, the State argued, "[W]e have a four year old child. At the request of her guardian, she believes that it will be difficult for [A.G.C.] to testify while her father is staring at her."[5]

¶24. The trial court ultimately struck a balance between protecting the child from emotional trauma and protecting Pitts' constitutional rights. The trial court explained, "We have the screen set up where the defendant cannot be seen from the witness stand and we have a zoom video set up with the audio that's off on that because you can hear through the court speakers and it's set up so that the defendant can view the child as she testifies." Pitts was able to view the victim during her testimony via the Zoom video at all times.[6]

¶25. On appeal, Pitts argues Mississippi Code Annotated section 99-43-101(2)(g) is "unconstitutional and that the use of the screen prejudiced the jury against Appellant." Although the defendant was able to see the child testifying through the Zoom video, on appeal, Pitts argues the placement of the screen was nevertheless unconstitutional due to a violation of the Confrontation Clause and the Due Process Clause of the United States

---

[5] During oral arguments, the Appellant's counsel suggested the screen was placed to keep the child from "running to her daddy" during her testimony. This is not supported by the record.

[6] During oral arguments, the Appellant's counsel suggested the placement of the screen interfered with the defendant's access to his counsel during trial. This is not supported by the record. Further, the Appellant's counsel conceded during oral arguments that Pitts could see and communicate with his counsel at all times during the child's testimony.

Constitution.

¶26.    Mississippi Code Annotated section 99-43-101(2)(g) states:

> (2) In any proceeding in which a child testifies, a child shall have the following rights to be enforced by the court on its own motion or upon motion or notice of an attorney in the proceeding:
>
> . . . .
>
> (g) To permit the use of a properly constructed screen that would permit the judge and jury in the courtroom or hearing room to see the child but would obscure the child's view of the defendant or the public or both.

### A.    The Confrontation Clause

¶27.    There are no Mississippi appellate cases specifically interpreting 99-43-101(2)(g). However, since the appellant argues the constitutionality of the statute, it is important to review the standards the Mississippi Supreme Court has set forth in reviewing this issue. "When addressing a statute's constitutionality, we apply a de novo standard of review, bearing in mind (1) the strong presumption of constitutionality; (2) the challenging party's burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts are resolved in favor of a statute's validity." *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 243-44 (¶3) (Miss. 2012).

¶28.    "The statutes must be shown to be in direct conflict with 'the clear language of the constitution.'" *Clark v. Bryant*, 253 So. 3d 297, 300 (¶8) (Miss. 2018) (quoting *5K Farms, Inc. v. Miss. Dep't of Rev.*, 94 So. 3d 221, 227 (Miss. 2012)). "The interpretation of a statute is a question of law, and the standard of review on appeal is de novo." *Dancy v. State*, 287 So. 3d 931, 935-36 (¶14) (Miss. 2020) (citing *Rex Distrib. Co. Inc. v. Anheuser-Busch LLC*,

271 So. 3d 445, 449 (Miss. 2019)). "Therefore, we review the circuit court's interpretation and application of the law de novo, and its findings of fact will not be reversed if supported by substantial evidence." *Id.* (citing *Falkner v. Stubbs*, 121 So. 3d 899, 902 (Miss. 2013)). "Statutes . . . come before us clothed with a heavy presumption of constitutional validity. The party challenging the constitutionality of a statute is burdened with carrying his case beyond all reasonable doubt before this Court has authority to hold the statute, in whole or in part, of no force or effect. When a party invokes our power of judicial review, it behooves us to recall that the challenged act has been passed by legislators and approved by a governor sworn to uphold the [same] constitution as are we." *Trainer v. State*, 930 So. 2d 373, 377 (¶7) (Miss. 2006) (quoting *Hart v. State*, 87 Miss. 171, 39 So. 523, 524 (1905)). To be successfully challenged, the legislation must be shown to be in "palpable conflict with some plain provision of the constitution." *In re B.C.M.*, 744 So. 2d 299, 301 (¶7) (Miss. 1999) (citing *State v. Miss. Ass'n of Sup'rs Inc.*, 699 So. 2d 1221, 1223 (¶6) (Miss. 1997)).

¶29.    Further, we must remember our position as the Mississippi Court of Appeals. The Mississippi Court of Appeals is "duty bound to apply existing precedent." *Bosarge v. State*, 786 So. 2d 426, 431 (¶11) (Miss. Ct. App. 2001). However, in this case, there are no cases directly on point. The fundamental task raised to this Court in the present case is interpreting the constitutionality of the particular statute. In doing this, we must look to the language of the statute to interpret the purpose of the Legislature. "Only by seeking that purpose can we avoid the substitution of judicial for legislative will. Only by reading language in its light can we maintain the democratic link between voters, legislators, statutes, and ultimate

12

implementation, upon which the legitimacy of our constitutional system rest." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 584 U.S. 291, 323-24 (2006) (Breyer, J., dissenting).

¶30.   As there are no Mississippi cases directly on point, the Mississippi Supreme Court has instructed us that turning to other states for guidance may prove helpful. *Weatherly v. Welker*, 943 So. 2d 665 (¶8) (Miss. 2006). "In a case of first impression Mississippi Courts look to other jurisdictions in determining the matter." *Par. Transp. LLC v. Jordan Carriers Inc.*, 327 So. 3d 45, 54 (¶25) (Miss. 2021) (quoting *Forrest Gen. Hosp. v. Upton*, 240 So. 3d 410, 418 (¶32) (Miss. 2018)).

¶31.   The United States Supreme Court addressed a child witness testifying behind a screen in *Coy v. Iowa*, 487 U.S. 1012 (1988). The defendant was charged with sexually assaulting two children. *Id.* At the jury trial, "the court granted the State's motion, pursuant to a 1985 statute intended to protect child victims of sexual abuse, to place a screen between the defendant and the girls during their testimony, which blocked him from their sight but allowed him to see them dimly and to hear them." Under the statutory scheme in Iowa at the time, the child witness was permitted to testify either via closed-circuit television or behind a screen. The defendant was convicted of two counts of lascivious acts with a child, and the Iowa Supreme Court affirmed. On appeal, the United States Supreme Court held the Confrontation Clause guaranteed the defendant a face-to-face meeting with witnesses appearing before the trier of fact. The United States Supreme Court explained:

> What was true of old is no less true in modern times. President Eisenhower once described face-to-face confrontation as part of the code of his hometown of Abilene, Kansas. In Abilene, he said, it was necessary to "[m]eet anyone face to face with whom you disagree. You could not sneak up on him from

behind, or do any damage to him, without suffering the penalty of an outraged citizenry. **In this country, if someone dislikes you, or accuses you, he must come up in front. He cannot hide behind the shadow.**" Press release of remarks given to the B'nai B'rith Anti-Defamation League, November 23, 1953, quoted in *Pollitt*, *supra*, at 381. The phrase still persists, "Look me in the eye and say that." Given these human feelings of what is necessary for fairness, the right of confrontation "contributes to the establishment of a system of criminal justice in which the perception as well as the reality of fairness prevails." *Lee v. Illinois*, 476 U.S. 530, 540, 106 S. Ct. 2056, 2062, 90 L. Ed. 2d 514 (1986).

*Id*. at 1017-19 (emphasis added).

¶32.　The Court reversed and remanded the conviction, holding, "[S]ince there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception." *Id.* at 1020. The Court importantly noted, "We leave for another day, however, the question whether any exceptions exist. Whatever they may be, they would surely be allowed only when necessary to further an important public policy." *Id.* at 1021. The Court held that rights conferred by the Confrontation Clause are not absolute and may give way to other important interests, but a "legislatively imposed presumption of trauma" was not sufficient to justify an exception. *Id.*

¶33.　Justice O'Connor, in her concurrence in *Coy*, gave further latitude and explained that future cases may prove not to be a violation of the Confrontation Clause:

> But it is also not novel to recognize that a defendant's "right physically to face those who testify against him," even if located at the "core" of the Confrontation Clause, is not absolute, and I reject any suggestion to the contrary in the Court's opinion. Rather, the Court has time and again stated that the Clause **"reflects a preference for face-to-face confrontation at trial," and expressly recognized that this preference may be overcome in a particular case if close examination of "competing interests" so warrants**.

*Id.* at 1024 (emphasis added) (citations omitted).

¶34.   Just two years later, the United States Supreme Court expanded on what a permissible exception would be under *Coy*. The defendant in *Maryland v. Craig* was charged with sexual assault and sexual battery arising out of her operation of a preschool and abuse of the students. *Maryland v. Craig*, 497 U.S. 836, 840 (1990). Under the Maryland statute in place at the time, the child was permitted to testify via one-way closed-circuit television. *Id.* To invoke the procedure, the trial judge had to first "determine that testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Id.* at 841. "Once the procedure is invoked, the child witness, prosecutor, and defense counsel withdraw to a separate room; the judge, jury, and defendant remain in the courtroom. The child witness is then examined and cross-examined in the separate room, while a video monitor records and displays the witness' testimony to those in the courtroom." *Id.* "During this time the witness cannot see the defendant. The defendant remains in electronic communication with defense counsel . . . ." *Id.* at 841-42. The Supreme Court approved this statutory scheme as an exception under *Coy*. *Id.* at 860. The United States Supreme Court held a state's "interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure," provided that the State makes an adequate showing of necessity in an individual case. *Id.* at 855.

¶35.   The Supreme Court held the right to face-to-face confrontation was not absolute and could be denied if the denial was necessary to further an important public policy and the

reliability of the testimony was otherwise assured. *Id.* The Court stated that "a State's interest in the physical and psychological well-being of child abuse victims" was an important public policy that would "outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Id.* at 853. The Court explained that the core elements of the confrontation clause must be preserved:

> The combined effect of these elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact—serves the purposes of the Confrontation Clause **by ensuring that evidence admitted against an accused is reliable and subject to the rigorous adversarial testing** that is the norm of Anglo-American criminal proceedings.

*Id.* at 846 (emphasis added).  The Court explained that an exception to the rights under the Confrontation Clause "would surely be allowed only when necessary to further an important public policy . . . only upon a showing of something more than the generalized, legislatively imposed presumption of trauma underlying the statute at issue in that case." *Id.* at 844-45 (internal quotation marks omitted).

¶36.     Under *Craig*, the trial court must make individualized findings that each child witness needs special protection. *Id.* First, the requisite finding of necessity must be case-specific. *Id.* at 855. "The trial court must . . . find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 856. "Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify." *Id.* at 856 (internal quotation mark omitted).

¶37.     The Supreme Court upheld the Maryland statute, holding:

16

[W]here necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate, the Confrontation Clause **does not prohibit use of a procedure** that, despite the absence of face-to-face confrontation, **ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation**. Because there is no dispute that the child witnesses in this case testified under oath, were subject to full cross-examination, and were able to be observed by the judge, jury, and defendant as they testified, we conclude that, to the extent that a proper finding of necessity has been made, the admission of such testimony would be consistent with the Confrontation Clause.

*Id.* at 846 (emphasis added).

¶38.    In *Griffith v. State*, 584 So. 2d 383, 388 (Miss. 1991), the Mississippi Supreme Court reversed Griffith's conviction for felonious sexual penetration and remanded upon finding the statements made by the child victim to her teacher were hearsay and impermissibly admitted. In doing so, the Court furnished "guidelines for the courts to use in determining whether out-of-court statements made by a victim of child sexual abuse should be admitted into evidence before a jury." *Id.* at 384. Importantly, the Court analyzed exceptions to the Confrontation Clause for child victims under *Craig*. The Court explained in order to justify using one of these procedures, such as a closed circuit, the State must make an adequate showing of necessity. *Id.* at 387.

¶39.    Looking to other states, the Georgia Court of Appeals handled a similar issue in *Harris v. State*, 316, 604 S.E.2d 565 (Ga. Ct. App. 2004). In that case, the defendant was charged with one count of molesting a child. *Id.* "Before trial, the State had requested that the victim be allowed to testify by closed circuit television or in some other way such that she would not have to look directly at Harris. The State then requested that a blackboard be

17

positioned so that the child would not be able to see Harris's face but that the jury could see her and Harris. After Harris objected, the court required the State to justify its request." *Id.* After a hearing in which the mother of the victim testified to the fear the child felt about seeing the defendant again, the trial judge permitted a blackboard to be placed at an angle in front of the testifying child to block the child's view of the defendant. *Id.* The Georgia Court of Appeals noted the defendant and jury were able to see the child as she testified. *Id.* The Georgia Court of Appeals upheld the conviction stating the defendant never raised the issue of the constitutional violation and had therefore waived the argument and the defendant's trial counsel was not ineffective for failing to object. *Id.*[7]

¶40.    *People v. Rose*, 808 N.W.2d 301, 315 (Mich. Ct. App. 2010), involves a case strikingly similar to the one at bar.[8] The defendant was charged with four counts of first-degree sexual criminal conduct. *Id.* The victim was permitted to testify behind a screen under

---

[7] *See also People v. Laframboise*, No. 323674, 2016 WL 299778, at *2 (Mich. Ct. App. Jan. 21, 2016), in which the Michigan Court of Appeals held that although the child victims were permitted to testify behind a screen, "all elements of defendant's right to confront these children remained in place."

[8] *See also United States v. Anderson*, 51 M.J. 145, 150 (C.A.A.F. 1999) (the Court of Appeals for the Armed Forces holding that a military judge did not commit error by permitting several child victims to testify behind a screen); *Washington v. Commonwealth of Kentucky*, No. 2003-SC-0703-MR, 2005 WL 924332, at *6 (Ky. Apr. 21, 2005) (the Supreme Court of Kentucky holding that the child victim's testimony while the defendant was behind a screen in the courtroom did not violate the Confrontation Clause); and *State v. Vogelsberg*, 724 N.W.2d 519, 530 (Wis. Ct. App. 2006) (the Court of Appeals of Wisconsin holding that the placement of a barrier between the defendant and child witness did not violate the Confrontation Clause). *See also People v. Laframboise*, No. 323674, 2016 WL 299778, at *4 (Mich. Ct. App. Jan. 21, 2016) (the Michigan Court of Appeals holding that although the child victims were permitted to testify behind a screen, "all elements of defendant's right to confront these children remained in place").

a Michigan statute, which provided that "if the trial court finds, on the motion of a party, that "the special arrangements specified in subsection (16) are necessary to protect the welfare of the witness, the court shall order those special arrangements." *Id.* The special arrangements under the statute "include excluding unnecessary persons from the courtroom during the witness's testimony, rearranging the courtroom to move the defendant as far from the witness stand as is reasonable, and using a questioner's stand or podium." *Id.* at 508. On appeal, Rose argued that the trial court erred to the extent that it relied on the Michigan statute because it failed to make the necessary findings under that statute and because the statute does not specifically permit the use of witness screens. *Id.* The appellate court concluded the necessary findings were made:

> In this case, the trial court clearly found that the use of the witness screen was necessary to protect J.B. when it invoked MCL 600.2163a and stated that it was "necessary to permit this to protect the welfare of this child." In making its findings, the trial court also clearly referred to the fact that J.B. had expressed fear of Rose and that, given her age, the nature of the offenses, and her therapist's testimony, there was "a high likelihood" that testifying face to face with Rose would cause her to "regress in her therapy, have psychological damage" and could cause her "to possibly not testify. . . ." These findings were sufficient to warrant limiting Rose's ability to confront J.B. face to face. *See Craig*, 497 U.S. at 856-857, 110 S. Ct. 3157. In addition, aside from J.B.'s inability to see Rose, **the use of the witness screen preserved the other elements of the confrontation right and, therefore, adequately ensured the reliability of the truth-seeking process**.

*Id.* (emphasis added).[9]

---

[9] On federal habeas corpus review, the United States District Court for the Western District of Michigan held the Michigan Court's "resolution of Petitioner's confrontation clause challenge was neither contrary to, nor unreasonable application of, clearly established federal law." *Rose v. Rapelje*, No. 1:12-CV-1344, 2016 WL 4394214, at *4 (W.D. Mich. Aug. 18, 2016).

19

¶41.    Mississippi Code Annotated section 99-43-101(2)(g) is titled the Child Witness Standards of Protection. The statute states that "a child shall have the following rights" in any proceeding when the child testifies. Pitts raises concern about the word "shall" requiring the placement of a screen without requiring the court to specifically make a finding of fact for the necessity of a screen. The statute also states, "The defendant shall be afforded the rights applicable to defendants during trial, including the right to an attorney, the right to be confronted with the witness against the defendant, and the right to cross-examine the child." *Id.* Clearly, the legislative intent of this statute was to balance the defendant's rights and provide a child witness with certain protective rights. The statute contemplates and incorporates the importance of confrontation rights of the defendant to ensure compliance with those constitutional rights. The Supreme Court has addressed those confrontation concerns in the context of balancing a child's protection when testifying by requiring a finding of necessity for accommodation procedures.[10]

¶42.    The trial court inquired of the State as to the necessity of a screen to be placed. The State responded on the record. In essence, the State argued that the child was a tender four years old. The State argued that the guardian of the child was concerned about the trauma to the child from having to testify with Pitts "staring" at her and requested precautionary measures. The court allowed the parties time for argument on the issue and *Craig* was specifically discussed.  Then the court made its ruling allowing the placement of the screen

_____

[10] *See Craig*, 497 U.S. at 855; *Coy*, 487 U.S. at 1021.

but requiring a monitor be set up so the defendant could view the child witness.[11]

¶43.   In the present case, a four-year-old child was forced into an adult world, when sexually abused, while still emotionally immature. Further, this child was forced back into an adult world when required to testify about sexual abuse in the courtroom when the trial occurred. Courtrooms are open, usually large rooms and intimidating to most adults not familiar with its procedures. It can only be more for to a child who did not ask for any of the emotional abuse suffered at the hands of an adult. Instead of protecting the child as was meant throughout nature, the adult in this case, her father, was charged with and later convicted of sexually abusing her.

¶44.   The trial court struck a balance between protecting legislatively established rights of a child witness and the constitutional rights of a person charged with a crime.[12] That balance,

---

[11] The Court never made a specific finding of trauma to the child. Nothing requires the judge to recite the magic words to suddenly meet constitutional requirements if it is clear the judge made a finding of necessity. By way of analogy, in *Jones v. Mississippi*, 141 S. Ct. 1307, 1320 (2021), the United States Supreme Court held that trial courts were not required to make on-the-record findings of facts. The Court stated it "has never required an on-the-record sentencing explanation or an implicit finding regarding those mitigating circumstances. . . . A sentencing explanation is not necessary to ensure that the sentencer in death penalty cases considers the relevant mitigating circumstances. It follows that a sentencing explanation is likewise not necessary to ensure that the sentencer in juvenile life-without-parole cases considers the defendant's youth." *Id.* Further, in *Jenkins v. State*, 75 So. 3d 49, 55 (¶18) (Miss. Ct. App. 2011), in the context of a Rule 403 balancing test, this Court held that although the trial judge did not use the "magic words," it was implicit in the judge's statements that the trial judge found the evidence more probative than prejudicial. Further, formal language is not required in making a finding under the Daubert standard. *See generally Clark v. State*, 315 So. 3d 987 (Miss. 2021), *cert. denied*, 142 S. Ct. 466 (2021).

[12] Other courts have upheld the use of other objects and the configuration of the courtroom to block the defendant from the view of the testifying child victim. In *Wilson v. State*, 114 P.3d 285, 297 (2005), the Supreme Court of Nevada held the prosecutor's

derives from the inherent power of the trial judge to control their courtroom. It is a longstanding rule that trial judges have the power to maintain control over the proceedings before it, one grounded in the "necessary and inherent power to regulate its proceedings." *Knott v. State*, 731 So. 2d 573, 576 (¶11) (Miss. 1999) (discussing the contempt power of courts). Furthermore, "[t]he manner of trial decorum . . . are matters largely left to the discretion of the trial judge, as he is present, has the opportunity, as well as the duty, to see that the course of the trial is conducted in conformity with traditional notions of fairness and impartiality to the litigants." *New Orleans & N.E.R. Co. v. Weary*, 217 So. 2d 274, 279 (Miss. 1968). The Mississippi Supreme Court explained in *Summerville v. State*, 207 Miss. 54, 41 So. 2d 377, 380 (1949), where a trial judge permitted the district attorney to ask a victim leading questions about the sexual act:

> It is of the greatest importance, in legal proceedings, that the truth be ascertained, yet, at the same time, that the fundamental rights of litigants be protected. Can we say the court abused its discretion under the circumstances of this case? We do not think so. **In the first place, the trial court was in much better position to judge the necessity and propriety of his action than is this Court. He saw the witness and observed the delicacy of the situation. He noted her sensibility to going forward and explaining in detail the intimate acts necessary for the State to prove to make out its case.** One girl of sixteen years might be much more humiliated to give the

placement of a podium which allowed the child to have her back to the defendant while testifying was not a violation of the Confrontation Clause. In *Smith v. State*, No. 07-09-0009-CR, 2010 WL 2010914, at *6 (Tex. App. May 20, 2010), the Court of Appeals of Texas held the prosecutor standing between the child witness and the defendant during the victim's testimony did not constitute a violation of the Confrontation Clause. In *State v. Owens*, No. M201801830CCAR3CD, 2020 WL 1130667, at *7 (Tenn. Crim. App. Mar. 9, 2020), the Court of Criminal Appeals of Tennessee held the configuration of the courtroom which prevented the defendant from seeing the testifying child victim did not violate Confrontation Clause. *See also* Fern L. Kletter, *Conditions Interfering with Accused's View of Witness as Violation of Right of Confrontation*, 61 A.L.R.7th Art. 2 (2021).

necessary intimate details essential to the crime here charged than another of the same age. **Each case must depend upon its own circumstances, and the trial judge is the person best situated to decide upon the course of conduct necessary to elicit the truth and yet safeguard the rights of the accused, and unless this Court can say, from the whole record, he abused his discretion and the accused was deprived of a fair and impartial trial, we should not reverse a case because of such action.**

(Emphasis added).

¶45.   The dissent argues Mississippi Code Annotated section 99-43-101(2)(g) could be applied in a manner consistent with the Confrontation Clause if the trial judge had supplemented the statute by making the findings that *Coy* and *Craig* require and if the record contained substantial evidence to support those findings. There was an on-the-record discussion where the court with the attorneys for the State and the defense discussed the statute and *Maryland v. Craig*, 497 U.S. 836 (1990), and *Coy v. Iowa*, 487 U.S. 1012 (1988). It can be deduced from that on-the-record discussion that the court was aware of the statute and the requirements of *Craig* and *Coy*. The court inquired of the State as to the necessity of the screen. Only then did the court authorize the use of the screen.

¶46.   At all times, Pitts was permitted to hear the child's testimony live and view her by looking at the monitor, which relayed the testimony in real-time. From a review of the record, it is obvious the child was subject to a full and thorough cross-examination. The jury, judge, and defense attorney all were able to view the witness and her demeanor at every moment during every word of her testimony.  Pitts viewed the child's emotions and demeanor in real time and had unfettered access to his attorney at all times while in the same courtroom. Further, the concerns expressed as to the "adversarial" testing were met with the procedure

23

utilized by the trial court in this case. Section 99-43-101(2)(g) functioned as legislators intended when considered in conjunction with *Craig* and *Coy*. Our rules of statutory construction and the supremacy of federal law require reading the statute in accordance with Supreme Court precedent. The child was protected while the defendant's right to confrontation also was ensured. As explained by the United States Supreme Court in *Craig*, certain "elements of confrontation-physical presence, oath, cross-examination, and observation of demeanor by the trier of fact-serves the purposes of the Confrontation Clause." *Craig*, 497 U.S. at 861. Each of those essential elements were protected and ensured in the present case. The defendant's confrontation rights were not violated by the procedure used in this case.

## B.    Harmless Error

¶47.    Notwithstanding the findings above, any Confrontation Clause violation is analyzed under a harmless error standard. *See Smith v. State*, 986 So. 2d 290, 300 (¶31) (Miss. 2008). In *Haynes v. State*, 934 So. 2d 983, 991 (¶40) (Miss. 2006), the Mississippi Supreme Court held, "[E]rrors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." For a violation of a constitutional right to be held harmless, this Court must determine that the violation was harmless beyond a reasonable doubt. *Id.* at (¶31) (citing *Chapman v. California*, 386 U.S. 18, 23 (1967)), similarly, "errors involving a violation of an accused's constitutional rights may be deemed harmless beyond a reasonable doubt where the weight of the evidence against the accused is overwhelming." *Id.* at (¶38) (citing *Clark*

*v. State*, 891 So. 2d 136, 142 (Miss. 2004)).

¶48.    The Court of Appeals of Arkansas examined this issue in an analogous case. In *Bertrand v. State*, 550 S.W.3d 416, 417 (Ark. Ct. App. 2018), an eight-year-old child was permitted to testify behind a screen without making the findings required by *Craig*. The screen in *Bertrand* was described as "a translucent screen through which shadows could be seen, but a direct view between the victim and the defendant was prohibited. The form of the individual sitting in the witness chair could be seen, but details or a clear line of sight were obstructed." *Id.* The trial judge in *Bertrand* made no finding that the denial of the right of confrontation was necessary to further an important public policy. *Id.* The court held, "[W]hile we agree with Bertrand that this was error, we hold under the facts of this case that the error was harmless and therefore affirm." *Id.* The Court held that "the evidence overwhelmingly established Bertrand's guilt, and thus, any error was harmless." *Id.* at 418.

¶49.    The screen did not prejudice the jury against Pitts; the evidence did. We find that if the placement of the screen were error, it was harmless. Under the standard in *Haynes*, there was overwhelming evidence of Pitts' guilt presented at trial. Both the child's mother and grandmother testified as to the child's consistent disclosure of the abuse. The child victim took the stand, and on cross-examination testified that while she still loved her father and wanted to see him, she "will just sleep somewhere else" so another incident with her father would not happen.

¶50.    The most incriminating evidence was presented by Pitts himself. Pitts introduced the written statements of the mother and the grandmother at trial despite both having testified

live. Pitts also introduced the child's forensic CAC interview and played it for the jury. During the video, the child was very talkative at first but appeared withdrawn when the touching was discussed. She told the interviewer, in a description consistent with her trial testimony, that her father put his finger in her vagina. Her exact words in the forensic interview were, "[W]hen I was trying to sleep he dug his finger in my vagina, [and] . . . when he was done he said touch mine, touch mine." Substantial evidence of Pitts' guilt was presented to the jury, and we find any error in placing the screen was harmless.

¶51. The dissent argues the placement of the screen was not harmless error. Under *Coy*, "[a]n assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged . . . had there been confrontation; such an inquiry would obviously involve **pure speculation**, and harmlessness must therefore be determined on the basis of the **remaining evidence.**" *Coy*, 487 U.S. at 1021-22 (emphasis added).

¶52. The dissent argues that under this analysis, this Court should not consider the testimonies of the mother and grandmother because they were admitted under the tender-years exception. Under the Rules of Evidence, hearsay is admissible if the child (i) testifies or (ii) is unavailable as a witness, and other evidence corroborates the act. MRE 803(25). Unavailability is defined in Mississippi Rule of Evidence 804(6) as "a child for whom testifying in the physical presence of the accused is substantially likely to impair the child's emotional or psychological health substantially." A.G.C. was a four-year-old child and clearly met the definition of tender years. The testimonies of the mother and the grandmother were corroborated by each other's testimony and the forensic interview. The testimony of the

26

mother and the grandmother should be considered as "remaining evidence" in a harmless error analysis.

¶53. The dissent further argues A.G.C.'s testimony should not be considered in a harmless error analysis. The dissent then speculates that Pitts would "have had no need" to introduce the video of A.G.C.'s forensic interview, and, therefore, this Court also should not consider that evidence. Making such a tenuous connection appears to be the type of "pure speculation" that *Coy* seeks to avoid. Pitts never raises this argument or offered any reason why he wanted to introduce the forensic interview. The dissent admits that during closing arguments Pitts' attorney argued A.G.C. gave inconsistent statements in the forensic interview. If we are to speculate, Pitts likely would have argued this point whether A.G.C. testified at trial with or without a screen. Further, the forensic interview of a child has been held admissible evidence under the tender-years exception by this Court and the Mississippi Supreme Court and was, in fact, admitted by Pitts himself. *Little*, 72 So. 3d at 561 (¶15); *Lambert v. State,* 101 So. 3d 1172, 1175 (¶10) (Miss. Ct. App. 2012); *Cook v. State*, 161 So. 3d 1057, 1069 (¶33) (Miss. 2015). Yet the dissent wants this Court to speculate as to Pitts' trial strategy and ignore the clearly admissible evidence that Pitts introduced in its harmless error analysis. We decline to do so.

### C. Due Process Clause

¶54. Pitts further argues the placement of the screen "only served the purpose to prejudice him in the eyes of the jury" and likens the practice to the defendant being shackled in front of the jury. The appellant argues the screen "tainted the presumption of innocence in the

27

minds of the jury" and violated his constitutional right to due process.

¶55. Pitts failed to present this argument to the trial court. "This Court's general policy is that errors raised for the first time on appeal will not be considered, especially where constitutional questions are concerned." *Almasri v. Miss. Dep't of Rev.*, 282 So. 3d 698, 702 (¶10) (Miss. Ct. App. 2019) (quoting *Powers v. Tiebauer*, 939 So. 2d 749, 752 (¶8) (Miss. 2005)) (citing *In re Miss. Medicaid Pharm. Average Wholesale Price Litig.*, 190 So. 3d 829, 845 (¶35) (Miss. 2015)). Pitts did object to the placement of the screen as a Confrontation Clause violation but never argued to the trial court it was a Due Process Clause violation. Pitts, therefore, waived this issue by failing to raise it at the trial level.

¶56. Notwithstanding the procedural bar, the Due Process Clause of the Fourteenth Amendment to the United States Constitution mandates that "criminal prosecutions must comport with prevailing notions of fundamental fairness." *Blakeney v. State*, 236 So. 3d 11, 27 (¶60) (Miss. 2017) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)) (citing *Freeman v. State*, 121 So.3d 888, 895 (Miss. 2013)). Trials are chaotic and adversarial. We strive not for a perfect trial, but for a fundamentally fair trial. The Supreme Court of Mississippi explained in *Clark v. State*, 891 So. 2d 136, 141 (¶19) (Miss. 2004):

> "'[A] defendant is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown v. United States*, 411 U.S. 223, 231-32, 93 S. Ct. 1565, 1570, 36 L. Ed. 2d 208 (1973). . . . That is, the Constitution does not guarantee a perfect trial, but it does entitle a defendant in a criminal case to a fair trial. *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S. Ct. 1431, 1436, 89 L. Ed. 2d 674 (1986).

¶57. In *State v. Parker*, 757 N.W.2d 7 (Neb. 2008), the defendant was charged with the first-degree assault of a child. The state requested the child testify in chambers, and after a

hearing on the request, the Court permitted the child to testify behind a screen. *Id.* at 672. The Supreme Court of Nebraska held the use of a screen in front of a testifying child was inherently prejudicial and a violation of the Due Process Clause. *Id.* at 673.[13] The court held, "We conclude that the screen unduly compromised the presumption of innocence fundamental to the right to a fair trial. The presence of the screen in the courtroom, in an obvious and peculiar departure from common practice, could have suggested to the jury that the court believed S.M. and endorsed her credibility, in violation of Parker's right to a fair trial." *Id.* at 663 The Nebraska Court explained jurors could conclude that trial court placed the screen "because the court believed her accusations were true." *Id.* at 672. We disagree.

¶58.    In *People v. Rose*, 808 N.W.2d 301, 315 (Mich. Ct. App. 2010), which we discussed above, the Michigan Court of Appeals upheld the conviction holding there was no due process violation where a screen was placed in front of the defendant. The court explained that not every practice that tends to single out the accused must be struck down. *Id.* This is because the jurors are understood to be "quite aware that the defendant appearing before them did not arrive there by choice or happenstance. . . ." *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986). The United States Supreme Court explained in *Holbrook*, 475 U.S. at 569, "While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable." The court in *Rose*, 808 N.W. 2d at 520, explained:

---

[13] The court found this issue dispositive and did not discuss the Confrontation Clause.

Although a juror might conclude that the witness fears the defendant because the defendant actually harmed the witness, a reasonable juror might also conclude that the witness fears to look upon the defendant because the witness is not testifying truthfully. A reasonable juror could also conclude that the screen is being used to calm the witness's general anxiety about testifying rather than out of fear of the defendant in particular.

¶59. A screen is not the sort of trapping that generally is associated with those who have been convicted of a crime as prison garb or shackles are. *Coy*, 487 U.S. at 1034-35 (Blackmun, J., dissenting). It is therefore unlikely that the use of the screen had a subconscious effect on the jury's attitude toward the defendant. The placement of a screen in front of a child victim is clearly about the protection of the child, not about placing undue fault or burden on the defendant.

¶60. In the present case, the jury was instructed, "You should not be influenced by bias, sympathy or prejudice. Your verdict should be based on the evidence and not be open to speculation, guesswork or conjecture." We hold that the use of a screen was not inherently prejudicial to Pitts, nor was Pitts prejudiced by the use of a screen in this case.

**II.     Did the trial court err by excluding the testimony of the Appellant's expert witnesses, Dr. Mark Webb and Dr. Gerald O'Brien?**

¶61. The trial court held that both proposed defense experts were excluded because the late disclosure of their reports was "a clear discovery violation." The experts examined Pitts in October 2020. The reports were not turned over to the State until January 2021, days before trial. There was no explanation given as to why this information could not have been turned over earlier.

¶62. Under Mississippi Rule of Criminal Procedure 17.3, a defendant must "promptly"

disclose any reports, statements, or opinions of experts that the defendant may offer into evidence. This Court reviews a trial court's ruling on discovery violations for an abuse of discretion. *Turner v. State*, 292 So. 3d 1006, 1016 (¶23) (Miss. Ct. App. 2020) (citing *Conley v. State*, 790 So. 2d 773, 782 (¶20) (Miss. 2001)). "This Court must determine (1) whether such a violation occurred[,] and, if so, (2) whether the exclusion of this evidence was an appropriate remedy." *Myers v. State*, 145 So. 3d 1143, 1147-48 (¶10) (Miss. 2014) (citing *Williams v. State*, 54 So. 3d 212, 213-14 (¶5) (Miss. 2011)). Trial courts are vested with substantial discretion over the admission of evidence outside of discovery deadlines, and appellate courts will not reverse a trial court's decision regarding discovery violations without finding an abuse of discretion. *Chase v. State*, No. 2018-KA-01501-COA, 2020 WL 772661, at *2 (¶11) (Miss. Ct. App. Feb. 18, 2020) (quoting *Gray v. State*, 799 So. 2d 53, 60 (¶26) (Miss. 2001) (citing *Hunter v. State*, 187 So. 3d 674, 678 (¶15) (Miss. Ct. App. 2016)).

¶63. In this case, this disclosure was clearly not "prompt" as required by the Rules of Criminal Procedure. Exclusion of the evidence was a proper remedy because the prosecution was not given a reasonable time to review the evidence prior to trial. The trial judge did not abuse his discretion in excluding the experts' testimonies because of a discovery violation.

¶64. The judge stated the "second basis" for the exclusion of the expert testimony was that the judge did not believe the opinions met the standard in Mississippi Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

31

(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

¶65. Citing *Middleton v. State*, 980 So. 2d 351, 359 (¶31) (Miss. Ct. App. 2008), Pitts argues that the Mississippi Supreme Court has held that an expert in child-sexual-abuse cases may testify about common characteristics associated with child-sexual-abuse, and this Court should extend that ruling to expert testimony concerning a defendant's characteristic of a sexual disorder. The Court of Appeals of Mississippi in *Middleton* upheld the introduction of expert testimony concerning the physical characteristics of a sexually abused child. *Id.* at (¶32). This decision was based on examining the medical report of the child and conclusion based on scientifically reliable methods that the injuries were a result of abuse or human intervention. *Id.* at (¶29). The proposed expert testimony in this case is different from that approved in *Middleton* because no physical characteristics exist to tell an expert whether a person is a pedophile. Importantly, the trial judge noted, "I do not believe that these opinions meet the 702 standard in that they are not the product of reliable principles."

¶66. A trial judge's decision to exclude expert testimony is reviewed for an abuse of discretion and the trial court's decision will stand unless it was arbitrary and clearly erroneous. *Clark*, 315 So. 3d at 994-95 (¶6). Pursuant to Mississippi Rule of Evidence 702, the trial judge must act "as gatekeeper on questions of admissibility of expert testimony." *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 40 (¶25) (Miss. 2003). "The proponent of expert testimony must show by a preponderance of the evidence that the expert is qualified, that he possesses scientific knowledge that will assist the jury, and that his testimony is based on

sufficient facts and data and reliable principles and methods, reliably applied to the facts of the case." *Brown v. Prof'l Bldg. Servs. Inc.*, 284 So. 3d 754, 761-62 (¶30) (Miss. Ct. App. 2017), *aff'd*, 252 So. 3d 23 (Miss. 2018). The trial judge "must consider whether the expert opinion is based on scientific knowledge (reliability) and whether the expert opinion will assist the trier of fact to understand or determine a fact in issue (relevance)." *Edmonds v. State*, 955 So. 2d 787, 791 (¶5) (Miss. 2007). "To be relevant, the evidence must 'fit' the case by being 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Corrothers v. State*, 148 So. 3d 278, 294 (¶24) (Miss. 2014) (quoting *Daubert v. Merrell Dow Pharms. Inc.*, 509 U.S. 579, 591 (1993)).

¶67. Mississippi applies the *Daubert* standard for admissibility of expert testimony. *McLemore*, 863 So. 2d at 35 (¶5) (adopting the federal standard for admissibility of expert witness testimony articulated in *Daubert*, 509 U.S. at 592-94, for Mississippi courts). It is the task of the trial court to make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93.

¶68. Both experts were admitted without objection as experts in their respective fields. The trial court excluded both doctors' testimonies stating their reports were not based on reliable scientific knowledge. This Court repeatedly has upheld the exclusion of nearly identical expert testimony. *See McCammon v. State*, 299 So. 3d 873 (Miss. Ct. App. 2020), *cert. denied*, 299 So. 3d 880, 884 (¶34) (Miss. 2020). In *Earnest v. State*, 805 So. 2d 599, 606 (¶22) (Miss. Ct. App. 2002), this Court upheld the exclusion of Dr. O'Brien's testimony in a similar case,

33

holding that his testimony that the defendant did not fit the profile of a sexual offender was not derived from scientific principles generally accepted in the field because no scientifically acceptable profile of a sex offender exists.

¶69. The trial judge did not abuse his discretion in excluding both Dr. Webb and Dr. O'Brien's expert testimony. The defense committed a clear discovery violation in the late disclosure of the expert reports. Further, the expert opinions failed to meet the second prong of the *Daubert* test, as they were not based on reliable scientific means.

### III. Did the trial court err by admitting prior bad acts under Mississippi Rule of Evidence 404(b)?

¶70. Pitts argues the court erred in admitting A.G.C.'s "past allegations," but after a close reading of the transcript, the jury never heard evidence of any other allegations against Pitts. The trial court held a pre-trial conference concerning the State's intent to introduce evidence of Pitts' prior bad acts against the victim. This evidence was never introduced at trial. Pitts makes no mention of any specific testimony to explain what "past allegations" he is referring to. The trial court did not have to conduct a Rule 403 balancing inquiry or grant a limiting instruction because this testimony was never introduced at trial. This issue is moot.

### IV. Did the trial court err by allowing witnesses to testify pursuant to the tender-years exception?

¶71. The trial court conducted a pre-trial hearing on the admissibility under the tender-years exception of the testimony of K.C. and T.C. concerning statements made by A.G.C. The trial court ruled both statements were admissible. Pitts argues the testimony had no probative value, was used to bolster the victim's testimony, and was a ruse to place his prior bad acts

in front of the jury.

¶72.    The State failed to address this argument in its brief. Appellate courts have two options in addressing an appellee's failure to file a brief:

> The first alternative is to take the appellee's failure to file a brief as a confession of error and reverse, [and] this should be done when the record is complicated or of large volume and the case has been thoroughly briefed by the appellant with apt and applicable citation of authority so that the brief makes out an apparent case of error[;] the second alternative is to disregard the appellee's error and affirm[, and] this alternative should be used when the record can be conveniently examined and such examination reveals a sound and unmistakable basis or ground upon which the judgment may be safely affirmed.

*In re L.T. v. Youth Ct. of Warren Cnty.*, 335 So. 3d 599, 602 (¶6) (Miss. Ct. App. 2022). In *Jordan v. State*, 211 So. 3d 713, 716 (¶11) (Miss. Ct. App. 2016), this Court held, "[A]n appellee's failure to file a brief on appeal is tantamount to confession of the errors alleged by the appellant. The same rule applies where the appellee files a brief, but fails to address an issue." But "automatic reversal is not required if this Court can say with confidence that the case should be affirmed." *Id.* at (¶12); *Dille v. State*, 334 So. 3d 1162, 1188 (¶71) (Miss. Ct. App. 2021).

¶73.    This court reviews the admission of hearsay evidence for abuse of discretion. *Blocton v. State*, 340 So. 3d 384 (¶14) (Miss. Ct. App. 2022) (citing *Garcia-Lebron v. State*, 323 So. 3d 1159, 1165 (¶21) (Miss. Ct. App. 2021)). To satisfy the element of the tender-years exception that statements have "substantial indicia of reliability" the trial judge has to make an overall determination that a child declarant was particularly likely to be telling the truth. *See* MRE 803(25); *accord Webb v. State*, 113 So. 3d 592, 596 (¶18) (Miss. Ct. App. 2012).

¶74.    Here, the trial court, on the record, thoroughly considered and weighed the tender years

factors. The court found that the child "had no apparent motive to lie" and that there was "nothing here about the general character of the declaring that would weigh toward excluding the testimony," there was more than one person who heard the statement, the statements were made spontaneously to the mother and to the CAC worker using techniques not suggestive in nature, the allegations were made within days after the event, "I don't believe that there's any possibility it's a faulty recollection," and the statements to CAC were on video. The child was "very verbal," and nothing about her age and maturity would weigh against the admissibility. "She is young enough that she would not have any knowledge or experience about digital penetration of her vagina." "Almost all these factors weigh in favor and provide[] substantial indicia of reliability." The court found that "the probative value of these statements [is] not substantially outweighed by the danger of unfair prejudice."

¶75. The judge conducted a thorough tender-years analysis on the record and found the child was likely telling the truth. This testimony was not "a ruse to place prior bad acts in front of the jury"; no prior bad acts were ever placed in front of the jury. There was no concern of confusing the jury. The testimony was used to describe A.G.C.'s initial disclosures that led to the charges against Pitts. The court did not abuse its discretion in admitting the testimony.

## V.     Was there cumulative error?

¶76. Pitts argues that "as a result of the cumulative errors in the trial, Appellant was denied a fair trial." The State responds that "there can be no cumulative error where, as here, there is no individual error," citing *Whittaker v. State*, 269 So. 3d 1226, 1230 (¶9) (Miss. Ct. App. 2018). Thus, the State contends, no cumulative error exists.

¶77.    The cumulative-error doctrine provides that "where one error, standing alone, may not warrant reversal, reversal may be required if the errors, taken together, 'create such an atmosphere of bias, passion, and prejudice that they effectively deny the defendant a fundamentally fair trial.'" *Jones v. State*, 203 So. 3d 600, 617 (¶58) (Miss. 2016) (quoting *Dickerson v. State*, 175 So. 3d 8, 35 (¶58) (Miss. 2015)).

¶78.    As stated above, Pitts was not prejudiced by the use of the screen in the courtroom. Further, the trial court did not err when it excluded the expert testimony. There was no prior bad-acts testimony introduced in this case. The trial court did not err when it admitted the hearsay testimony under the tender-years doctrine. Thus, no cumulative error exists.

¶79.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J.; McDONALD, J., JOINS IN PART.  EMFINGER, J., NOT PARTICIPATING.**

**WILSON, P.J., DISSENTING:**

¶80.    The use of a screen to block the alleged victim's view of Pitts during her testimony at trial clearly violated Pitts's constitutional right "to be confronted with the witnesses against him," U.S. Const. amend. VI, as interpreted by the United States Supreme Court.  That Court has held that in a case such as this, a child witness must testify in the defendant's presence unless the evidence shows, and the trial court specifically finds, that testifying in the defendant's presence would cause the child significant trauma or emotional distress.  In the present case, there was no such evidence, and the trial court made no such findings.  This

Court is, of course, "under authority of the United States Supreme Court," and we must follow its decisions in all "comparable cases." *Bolton v. City of Greenville*, 253 Miss. 656, 666, 178 So. 2d 667, 672 (1965). Therefore, we are bound to recognize that the use of a screen in this case violated Pitts's rights under the Confrontation Clause. In addition, the State cannot show that this constitutional error was harmless beyond a reasonable doubt. Accordingly, we must reverse the conviction and remand the case for a new trial. Since the majority instead affirms, I respectfully dissent. I also note that trial courts should avoid using the statute at issue in this case because it likely violates the separation-of-power provisions of the Mississippi Constitution, as interpreted by the Mississippi Supreme Court.

I. **Under binding United States Supreme Court precedent, a trial court *must* make a case-specific and individualized finding that testifying in the defendant's presence would traumatize a child witness before the child can testify at trial in the absence of face-to-face confrontation with the defendant.**

¶81. Two United States Supreme Court cases clearly resolve the Confrontation Clause issue in this case. First, in *Coy v. Iowa*, 487 U.S. 1012 (1988), Coy was charged with sexually assaulting two thirteen-year-old girls. *Id.* at 1014. Over Coy's objection, "[t]he trial court approved the use of a large screen to be placed between [Coy] and the witness stand during the girls' testimony. After certain lighting adjustments in the courtroom, the screen would enable appellant dimly to perceive the witnesses, but the witnesses to see him not at all." *Id.* at 1014-15. The trial court's ruling was based on an Iowa statute that permitted a screen to be placed between a child witness and the defendant if the court (a) took steps to ensure that the defendant and his attorney could confer during the testimony and (b) informed the child

38

witness that the defendant could see and hear the child during the testimony. *Id.* at 1015 n.1 (quoting Iowa Code § 910A.14 (1987)).

¶82.    However, the United States Supreme Court held that the screen violated Coy's constitutional right to confront his accusers. *Id.* at 1020. The Court reviewed the historical roots of the defendant's right "to be confronted with the witnesses against him" and held that the Confrontation Clause clearly guarantees a "face-to-face encounter" or "confrontation" between the defendant and the witnesses who testify against him at trial. *Id.* at 1015-20. The Court noted that most of its prior Confrontation Clause decisions had addressed the admissibility of out-of-court statements or limitations on cross-examination because "there is at least some room for doubt (and hence litigation)" regarding the Clause's application to such issues. *Id.* at 1016. In contrast, "'simply as a matter of English' [the Confrontation Clause] confers at least 'a right to meet *face to face* all those who appear and give evidence at trial.'" *Id.* (quoting *California v. Green*, 399 U.S. 149, 175 (1970) (Harlan, J., concurring)). The Court held that the screen used in *Coy* violated the Confrontation Clause because it "was specifically designed to enable the complaining witnesses to avoid viewing [Coy] as they gave their testimony, and . . . it was successful in this objective." *Id.* at 1020. Indeed, the Court concluded that it was "difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." *Id.*

¶83.    In *Coy*, the State argued that the defendant's right to confront the witnesses at trial "was outweighed by the necessity of protecting victims of sexual abuse." *Id.* at 1020. But the Supreme Court stated that it would "leave for another day . . . the question whether any

exceptions exist" to the defendant's right to confront witnesses at trial "face to face." *Id.* at 1021. The Court stated that any such exception would require "something more than the type of generalized legislative finding underlying [the Iowa] statute." *Id.* The Court further stated that "any conceivable exception" would require "individualized findings that the[] particular witness[] needed special protection." *Id.*

¶84. In a concurring opinion, Justice O'Connor stated that she "would permit use of a particular trial procedure that called for something other than face-to-face confrontation if that procedure was necessary to further an important public policy." *Id.* at 1025 (O'Connor, J., concurring). But Justice O'Connor agreed that an exception would require "more than [a] generalized legislative finding of necessity." *Id.* She stated "that the strictures of the Confrontation Clause [might] give way to the compelling state interest of protecting child witnesses" only if the court first made "a case-specific finding of necessity." *Id.*

¶85. In *Maryland v. Craig*, 497 U.S. 836 (1990), the Court revisited the issue *Coy* left open. In *Craig*, child witnesses in a sex abuse prosecution were allowed to testify outside the defendant's presence by one-way closed-circuit television. *Id.* at 840-43. Under Maryland law, the trial judge could allow such testimony only if the judge first found that testifying in court in the defendant's presence would cause the child witness to "suffer[] serious emotional distress such that the child [could not] reasonably communicate." *Id.* at 841 (quoting Md. Code Ann., Cts. & Jud. Proc. § 9-102(a)(1)(ii) (1989)). If the judge made that finding, the child would be examined and cross-examined in a separate room in the presence of the prosecutor and defense counsel, while the judge, the jury, and the defendant would remain in

the courtroom and observe by one-way closed-circuit television. *Id.* In addition, the defendant would remain in electronic communication with his attorney throughout the child's testimony. *Id.* at 842.

¶86. In *Craig*, the Supreme Court held "that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 855. The Court also held that "[t]he requisite finding of necessity *must of course be a case-specific one*: The trial court *must* hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* (emphasis added). More specifically, the Court held that "[t]he trial court must . . . find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 855-56. That is, "[d]enial of face-to-face confrontation" is constitutionally permissible only if "it is the presence of the defendant that causes the trauma." *Id.* "Finally, *the trial court must find* that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify." *Id.* (emphasis added) (quotation marks and citations omitted). The Court held that the Maryland statute satisfied these constitutional requirements because it required a preliminary judicial "determination that the child witness would suffer 'serious emotional distress such that the child cannot reasonably communicate.'" *Id.*

41

¶87.    Less than a year after *Craig* was decided, the Mississippi Supreme Court adopted a rule

of evidence that incorporates and complies with *Craig*'s constitutional requirements.  MRE

617.  Under Mississippi Rule of Evidence 617,

> the court may order that a child's testimony be taken outside the courtroom and
> shown in the courtroom by means of closed-circuit television if the court
> determines that:
>
> (1)    the child is under the age of 16 years;
>
> (2)    the testimony is that an unlawful sexual act, contact, intrusion,
> penetration, or other sexual offense was committed on the child; and
>
> (3)    there is a substantial likelihood that the child will suffer traumatic
> emotional or mental distress if compelled to testify:
>
> (A)    in open court; and
>
> (B)    in a criminal case, in the presence of the accused.

MRE 617(a).  In addition, "the court *must*: (A) conduct a hearing in camera; and (B) make

specific findings of fact, on the record, as to the basis of the ruling."  MRE 617(b)(2)

(emphasis added).

**II.    In the absence of a finding—or any evidence—that A.G.C. would be traumatized by testifying in Pitts's presence, the use of a screen to block A.G.C.'s view of Pitts violated Pitts's rights under the Confrontation Clause.**

¶88.    In the present case, the State opted not to proceed under Rule 617.  Instead, at the end

of proceedings on the afternoon before trial, the State for the first time requested permission

to use a "screen" during A.G.C.'s testimony pursuant to a statute enacted in 2015, Miss. Code

Ann. § 99-43-101(2)(g) (Rev. 2020).  After the jury had been selected and the trial judge had

finished hearing pretrial motions, the judge asked if there was "[a]nything else" he needed to

address before trial began the following morning. At that point, the State cited the statute and "ask[ed] for permission to permit the use of a properly constructed screen that would prevent [A.G.C.] from having to view [Pitts] in the courtroom during her testimony." The State argued that A.G.C. had a "right" to such a screen because the statute provides that "a child shall have" that and certain other "rights." Defense counsel objected to the lateness of the State's request, and the judge stated that he would have to research the issue overnight because, like defense counsel, he had "never heard of that statute."

¶89. The following day, before A.G.C. testified, Pitts objected that the proposed screen would violate his rights under the Confrontation Clause and that there was no evidence that A.G.C. was afraid of him. Pitts argued that testimony from the pretrial tender-years hearing indicated that A.G.C. was "not afraid of him" and indeed still "ha[d] a great deal of love for him." In response, the State asserted that A.G.C.'s mother "believe[d] that it [would] be difficult for [A.G.C.] to testify [with Pitts] staring at her."

¶90. But the State also argued,

> We don't have to put on that proof . . . . [T]he statute states that [A.G.C.] shall have that right[,] and I'm not required to put on any proof that she's scared of [Pitts]. . . . [T]he Mississippi Crime Victim's Bill of Rights [provides] that she shall be given that right if it's requested.

Moreover, the State specifically pointed out that "a different subsection" of the same statute provided that a child could testify by video deposition outside the defendant's presence, and this different subsection did "outline[] . . . certain requirements or certain proof that the State must put on about the child and any reason that [procedure] may be necessary." *See* Miss. Code Ann. § 99-43-101(5). But the State argued that under subsection (2)(g), the child

witness has a "right" to a screen while testifying in court, and "there are no requirements that the State put on proof on how the child might be affected by viewing [the] defendant [during her] testimony." The trial judge then directed defense counsel to address the fact that subsection (2)(g) "appears to be mandatory" and "appears not to require any proof."

¶91. When the trial judge ultimately announced his ruling, he again stated that the "statute . . . appear[ed] to be mandatory," and he expressed "some concerns about [his] ability to declare the statute unconstitutional and fail to follow it." The judge also stated that he was "concerned about the constitutionality of the statute." Nonetheless, the judge ruled that A.G.C. could testify behind a screen that blocked her view of Pitts.

¶92. The use of a screen in this case was clearly inconsistent with the United States Supreme Court's holdings in *Coy* and *Craig*. In *Coy*, the Court held that any possible exception to the defendant's right to confront witnesses "face to face" would require "something more than [a] generalized legislative finding." *Coy*, 487 U.S. at 1021. The Court held that "any conceivable exception" would require "individualized findings that the[] particular witness[] needed special protection." *Id.* Then in *Craig*, the Court held that a child witness may "testify at trial . . . in the absence of face-to-face confrontation with the defendant" *only* if the trial court first makes a case-specific finding of "necessity." *Craig*, 497 U.S. at 855. The Court also held that "[t]he requisite finding of necessity *must of course be a case-specific one*: The trial court *must* hear evidence and determine whether use of the one-way closed-circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify." *Id.* (emphasis added). In addition, "[t]he trial court must

. . . find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.* at 856. "Finally, *the trial court must find* that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify." *Id.* (emphasis added) (quotation marks and citations omitted).

¶93.    In this case, the trial judge made no such individualized findings. The problem is not just that the judge did not "recite the magic words," as the majority suggests. *Ante* at n.11.[14] The problem is that the judge did not—in form or substance—make any of the individualized, case-specific findings that the United States Supreme Court has held are absolutely necessary in a case such as this. *Coy*, 487 U.S. at 1021; *Craig*, 497 U.S. at 855-56. In support of its eve-of-trial request for a screen, the State argued that it "was not required to put on any proof" that testifying in Pitts's presence would traumatize A.G.C., and the trial judge ultimately agreed that the statute was "mandatory." Accordingly, the judge made none of the individualized findings required by *Coy* and *Craig*.

¶94.    Moreover, the record evidence in the case would not have supported a finding that testifying in Pitts's presence would have traumatized A.G.C. During a pretrial hearing,

---

[14] The majority's "analogy" to *Jones v. Mississippi*, 141 S. Ct. 1307 (2021), *see ante* at n.11, is misplaced. In *Jones*, the United States Supreme Court "unequivocally stated that a separate factual finding of permanent incorrigibility is *not* required before a sentencer imposes a life-without-parole sentence on a murderer under 18." *Id.* at 1318-19 (emphasis added). In *Jones*, the Court also held that not even "an 'implicit finding' of permanent incorrigibility" is required when a sentencing court addresses that issue. *Id.* at 1319. In stark contrast, addressing the defendant's right to face-to-face confrontation, the United States Supreme Court has twice held that the Constitution *does* require the trial judge to make individualized and case-specific findings that testifying in the defendant's presence will traumatize the child witness. *Coy*, 487 U.S. at 1021; *Craig*, 497 U.S. at 855-56.

45

A.G.C.'s mother testified that A.G.C. was still "very adamant that she love[d] her dad, that she misse[d] her dad, *and that she want[ed] to see her dad.*" (Emphasis added). The only evidence regarding the effect that testifying in Pitts's presence would have on A.G.C. was her mother's statement that A.G.C. "was very distraught over the fact that she would have to come to court and testify with her daddy in the courtroom *and not be able to talk to him.*" (Emphasis added). But A.G.C.'s distress that she would not be able to talk to Pitts if she saw him in the courtroom does not establish that Pitts's presence would have traumatized A.G.C. or caused her significant emotional distress. Indeed, at trial, A.G.C. testified that she loved and missed Pitts and that she would want to hold him and hug him if she could see him. Thus, in addition to the lack of any actual findings regarding the potential for trauma to A.G.C., there is simply no evidence in the record that could satisfy the requirements of *Coy* and *Craig*.[15] In the absence of such findings and evidence, the use of a screen in this case clearly violated the Confrontation Clause, as interpreted in *Coy* and *Craig*.[16]

---

[15] Despite the absence of such evidence, the majority says that "[t]*he State argued that* the guardian of the child was concerned about the trauma to the child from having to testify with Pitts 'staring' at her . . . ." *Ante* at ¶42 (emphasis added). Of course, mere "arguments of counsel are not evidence." *One 1970 Mercury Cougar v. Tunica County*, 115 So. 3d 792, 796 (¶20) (Miss. 2013) ("No citation of authority is necessary for the fundamental proposition[] . . . that the arguments of counsel are not evidence."). In addition, what the State actually argued was that A.G.C.'s "guardian . . . believe[d] that it [would] be difficult for [A.G.C.] to testify while her father [was] staring at her." But as the trial judge noted, the defendant and "everybody in the room" *should be* "staring at the witness while they're testifying." Moreover, the fact that testifying in the defendant's presence may be "difficult" for a witness is not sufficient to override the defendant's right to face-to-face confrontation under *Coy* and *Craig*.

[16] Mississippi Code Annotated section 99-43-101(2)(g) could be applied in a manner consistent with the Confrontation Clause if the trial judge supplemented the statute by making the findings that *Coy* and *Craig* require and the record contained substantial

### III. The constitutional error in this case cannot be dismissed as "harmless error."

¶95. A violation of the Confrontation Clause may be deemed harmless error only "if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Smith v. State*, 986 So. 2d 290, 300 (¶31) (Miss. 2008) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)). Moreover, "[o]nce the constitutional error has been established, the burden is on the State to demonstrate the error is harmless beyond a reasonable doubt." *Id.*

¶96. Applying this exacting harmless-error standard, the error in this case cannot be dismissed as harmless. To begin with, the majority's harmless-error argument improperly relies on A.G.C.'s testimony. *Ante* at ¶49. In this precise context, the United States Supreme Court has held that a determination of harmless error cannot rest on the very testimony that violated the Confrontation Clause. In *Coy*, the Court stated, "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and *harmlessness must therefore be determined on the basis of the remaining evidence*." *Coy*, 487 U.S. at 1021-22 (emphasis added).

¶97. The majority's harmless-error analysis also problematically relies on hearsay testimony from A.G.C.'s mother and grandmother that was admissible only because A.G.C. also testified at trial. The mother's and grandmother's testimony was admitted under the tender-years

---

evidence to support those findings. But such findings and evidence are absent in this case. In addition, as discussed in Part IV, *infra*, the statute likely violates the separation-of-powers provisions of the Mississippi Constitution, as interpreted by the Mississippi Supreme Court.

47

exception to the hearsay rule. *See* MRE 803(25). Hearsay is admissible under that exception only if, among other things, "the child either: (i) testifies; or (ii) is unavailable as a witness, *and* other evidence corroborates the act." MRE 803(25)(B) (emphasis added). In this case, A.G.C. was not "unavailable as a witness,"[17] nor is there any "other evidence" that "corroborates" the alleged sexual battery.[18] Thus, the admissibility of the mother's and grandmother's hearsay testimony depended on A.G.C.'s testifying at trial.[19] I do not see how

[17] A child witness is considered unavailable if "testifying in the physical presence of the accused is substantially likely to impair the child's emotional or psychological health substantially." MRE 804(a)(6). The proponent of hearsay bears the burden of proving that the declarant is unavailable. *See, e.g.*, *Ellis v. State*, 196 So. 3d 1029, 1034 (¶15) (Miss. Ct. App. 2015). As discussed above, there was no evidence that testifying in Pitts's presence was substantially likely to impair A.G.C.'s emotional or psychological health substantially.

[18] The majority asserts that there is "other evidence" that "corroborates the act" because A.G.C.'s out-of-court statements to her mother, her grandmother, and the CAC interviewer all corroborate each other. *Ante* at ¶52. Although the issue does not appear to have been addressed in Mississippi, the Colorado Supreme Court and two Florida District Courts of Appeal have held that other hearsay statements by the same child cannot satisfy the other-corroborative-evidence requirement. *People v. Bowers*, 801 P.2d 511, 527 (Colo. 1990) (holding that Colorado's tender-years exception "was not intended to sanction the use of one of the child's hearsay statements as corroborative evidence of the act described in another hearsay statement made by the same child"); *Delacruz v. State*, 734 So. 2d 1116, 1122 (Fla. 1st Dist. Ct. App. 1999) ("[W]e hold that out-of-court statements of the alleged child victim may not be used to satisfy the 'other corroborative evidence' requirement of [Florida's tender-years exception]."); *R.U. v. Dep't of Children & Families*, 777 So. 2d 1153, 1160 (Fla. 4th Dist. Ct. App. 2001) ("The child declarant's hearsay statements cannot be 'other' corroborating evidence within the meaning of [Florida's tender-years exception]. We read the word 'other' in the rule as denoting evidence derived from a source other than the child victim's own statements."). As one of the Florida courts noted, the majority's interpretation of the rule "would permit those charged with crimes against children to be convicted based solely upon hearsay evidence." *Delacruz*, 734 So. 2d at 1121-22. I find these decisions persuasive and would likewise hold that other hearsay statements by the same child cannot satisfy Rule 803(25)(B)(ii)'s other-corroborative-evidence requirement.

[19] Prior to trial, in response to questions by the trial court, the State made clear that A.G.C. would testify at trial and that it was seeking admission of her out-of-court statements

48

we can deem a Confrontation Clause violation harmless based on hearsay that was admitted at trial only because of the very testimony that violated the Confrontation Clause. In any event, we cannot "confidently say . . . *beyond a reasonable doubt*" that the jury would have convicted Pitts based solely on pure hearsay. *Smith*, 986 So. 2d at 300 (¶31) (emphasis added) (quoting *Van Arsdall*, 475 U.S. at 681).

¶98. Finally, the majority states that any error was harmless because "[t]he most incriminating evidence was presented by Pitts himself," citing the video of A.G.C.'s CAC interview and the written statements of A.G.C.'s mother and grandmother. *Ante* at ¶50. Reliance on this evidence is also problematic because Pitts introduced it in response to A.G.C.'s trial testimony, which violated the Confrontation Clause, and the mother's and grandmother's hearsay testimony, which was allowed only because A.G.C. first testified in violation of the Confrontation Clause. Had A.G.C. not first been allowed to testify in violation of the Confrontation Clause, Pitts would have had no need to introduce this allegedly "most incriminating evidence."

¶99. But even setting that problem to the side, I respectfully disagree that this Court can "confidently say . . . *beyond a reasonable doubt*" that the jury would have convicted Pitts based on the video of the CAC interview or written statements relaying hearsay. *Smith*, 986 So. 2d at 300 (¶31) (emphasis added) (quoting *Van Arsdall*, 475 U.S. at 681). The interview is approximately one-hour long, statements that A.G.C. makes during the course of the interview are incriminating, and a jury certainly could find A.G.C.'s account to be truthful and

under Mississippi Rule of Evidence 803(25)(B)(i).

49

credible. But Pitts introduced the video because he believed that, on balance, the interview raised doubts about A.G.C.'s allegations. During the interview, A.G.C. initially stated that no one had ever touched her vagina. Later in the interview, A.G.C. talked about the incident when Pitts applied Butt Paste or "medicine" to or around her vagina because her vagina was itching and red and she had been scratching it. A.G.C. said "it felt much better when he put the medicine on it," and Pitts told her "not to scratch it" anymore. A.G.C. said that her half-sister was present during that incident. Finally, approximately thirty-five minutes into the interview, in response to further questions from the interviewer, A.G.C. stated that Pitts had inserted his finger into her vagina on other occasions. In his closing argument, Pitts's counsel argued that the A.G.C. gave inconsistent statements during the interview and incriminated Pitts only in response to excessive prodding and questioning by the interviewer.

¶100. To be clear, I am not suggesting that A.G.C.'s testimony or her statements to the interviewer are not credible. Nor am I suggesting that A.G.C.'s testimony would not be *sufficient* to support a conviction if she were to give similar testimony in compliance with the requirements of the Confrontation Clause. But under *Coy*, this Court's harmless-error analysis *may not consider A.G.C.'s testimony*. *Coy*, 487 U.S. at 1021-22. Moreover, the issue for this Court is not whether "the remaining evidence" was merely *sufficient* to support the conviction; rather, the issue is whether we can confidently say "beyond a reasonable doubt" that the jury would have convicted Pitts *without A.G.C.'s testimony*. *Id.* Further, as discussed above, there is the additional problem that "the remaining evidence" against Pitts was admissible at trial or introduced by Pitts only because A.G.C. first testified in violation of the

50

Confrontation Clause. But even setting that issue aside, the State cannot show,[20] and this Court cannot find "beyond a reasonable doubt," that the jury would have convicted Pitts of this serious crime *without the alleged victim's testimony and based solely on hearsay*. Accordingly, the constitutional error in Pitts's trial cannot be deemed harmless.

### IV. Mississippi Code Annotated section 99-43-101 likely violates the separation-of-powers provisions of the Mississippi Constitution.

¶101. Although the parties did not raise the issue, section 99-43-101(2)(g) also raises a significant constitutional question under the separation-of-powers provisions of Mississippi Constitution, as interpreted by the Mississippi Supreme Court. In *Hall v. State*, 539 So. 2d 1338 (Miss. 1989), the Court addressed the constitutionality of a prior statute on this subject, the Evidence of Child Sexual Abuse Act, 1986 Miss. Laws ch. 435, codified at Miss. Code Ann. §§ 13-1-401 to -415 (Rev. 2019). Specifically, the Court addressed the Act's legislatively created exception to the hearsay rule for certain out-of-court statements by children in child sex abuse prosecutions. *Hall*, 539 So. 2d at 1340-41, 1343-44 (discussing section 13-1-403). The defendant in *Hall* had been convicted based on hearsay testimony from social workers regarding out-of-court statements by the alleged victim. *Id.* at 1340-41. Their testimony was inadmissible under the Mississippi Rules of Evidence but admissible under the Evidence of Child Sexual Abuse Act. *Id.* at 1341-44. On appeal, the Supreme Court reversed the conviction, holding that the Act violated the separation-of-powers provisions of the Mississippi Constitution. *Id.* at 1346. The Court stated,

---

[20] *Smith*, 986 So. 2d at 300 (¶31) ("[T]he burden is on the State to demonstrate [that a constitutional] error is harmless beyond a reasonable doubt.").

As trials are the core activity of the judiciary, so the promulgation of rules for the regulation of trials lie at the core of the judicial power. That being so, it only follows that the officers of neither the legislative nor executive departments of government, acting jointly or severally, had authority to confer legal validity upon the Evidence of Child Sexual Abuse Act.

*Id.*

¶102. Although *Hall* specifically involved provisions of the Evidence of Child Sexual Abuse Act regarding hearsay, the Supreme Court's opinion indicated that the entire Act was unconstitutional. *Id.*[21] That Act also included provisions that permitted a child to testify by closed-circuit television or videotaped testimony if the trial court first made certain on-the-record-findings. *See generally* Miss. Code Ann. §§ 13-1-405 & -407. While declaring the Act unconstitutional, the Court also referred "the entire subject of evidence of child sexual abuse" to the Supreme Court Advisory Committee on Rules and directed the Committee to "study and investigate the matter and, in the end, recommend whether and to what extent [the Court] ought amend the Mississippi Rules of Evidence" to address that subject. *Hall*, 539 So. 2d at 1347-48. After studying the subject, the Committee recommended certain amendments to Rules 803 and 804, and the Court ultimately adopted those amendments along with a new Rule 617 governing testimony by a child witness by closed-circuit television, which is discussed above (*see supra* ¶87). *See In re: Mississippi Rules of Evidence Nos. 617, 803 and 804 and Comments to Rules 617, 803 and 804*, No. 89-R-99002 (Miss. Mar. 27, 1991),

---

[21] *See also id.* at 1349 (Hawkins, P.J., dissenting) (recognizing that "[u]nder the majority's holding the Legislature had no constitutional authority to enact [the entire Evidence of Child Sexual Abuse Act], a comprehensive series of statutes dealing with evidence in child sexual abuse cases"); *Bowen v. State*, 607 So. 2d 1159, 1161 (Miss. 1992) (stating that *Hall*'s holding extended to other provisions of the Act).

reported at 574-576 So. 2d XXVIII (West's Miss. Cases 1991). As discussed above, Rule 617 incorporates *Craig*'s constitutional requirements and provides for the child witness to testify by closed-circuit television if those requirements are satisfied. *See* MRE 617.

¶103. Despite *Hall*'s holding and the Mississippi Supreme Court's subsequent adoption of Rule 617, in 2015 the Legislature once again attempted to establish rules governing evidence in child sexual abuse cases when it enacted Mississippi Code Annotated section 99-43-101, which, among other things, purports to grant a child witness a right to testify behind a screen that will "obscure the child's view of the defendant" in a criminal case. Miss. Code Ann. § 99-43-101(2)(g); *see* 2015 Miss. Laws ch. 493, § 2 (H.B. 959). With respect to separation-of-powers concerns, there is no meaningful difference between the 1986 Evidence of Child Sexual Abuse Act and the 2015 statute at issue in this case. Therefore, under *Hall*, the 2015 statute likely violates the separation-of-powers provisions of the Mississippi Constitution.[22] Indeed, if anything, the 2015 statute is more problematic from a separation-of-powers standpoint because it mandates a procedure and rule that differ materially from what the Supreme Court adopted in Rule 617.

¶104. Although Pitts has not raised the separation-of-powers issue in this case, the trial judge alluded to the problem indirectly when he observed that he was "looking at a statute that appear[ed] to be mandatory" and that he "ha[d] some concerns about [his] ability to declare

---

[22] For a recent criticism of *Hall*, see Channing J. Curtis & Christopher R. Green, *Forty Years Across the Rubicon*, 92 Miss. L.J. (forthcoming 2023), available at https://ssrn.com/abstract=4080396 (revised Dec. 30, 2022). This Court is, of course, bound by *Hall*. *See, e.g.*, *Hudson v. WLOX Inc.*, 108 So. 3d 429, 432 (¶10) (Miss. Ct. App. 2012) ("[T]his court lacks authority to overrule Mississippi Supreme Court precedent.").

the statute unconstitutional and fail to follow it." When the trial judge granted the State's request for a screen, the judge was not, as the majority suggests, exercising his "inherent power" or "discretion" "to control [his] courtroom." *Ante* at ¶44. Rather, he was acceding to a *legislative mandate* regarding the manner in which a witness should testify at trial. Under *Hall*, such mandates violate the Mississippi Constitution.

¶105. In the present case, I would not declare the statute unconstitutional under *Hall* because Pitts has not raised the issue.[23] But in future cases, prosecutors and trial courts should avoid this significant constitutional problem by proceeding under Rule 617, if necessary, rather than under this statute.

\* \* \* \* \*

¶106. The manner in which the alleged victim testified at trial violated the Confrontation Clause under clear holdings of the United States Supreme Court. Furthermore, this Court cannot determine "beyond a reasonable doubt" that the jury would have convicted Pitts without the alleged victim's testimony and based solely on hearsay. Therefore, we are bound to reverse the conviction and remand the case for a new trial. Accordingly, I respectfully dissent from the majority's decision to affirm.

**WESTBROOKS, J., JOINS THIS OPINION. McDONALD, J., JOINS THIS OPINION IN PART.**

---

[23] *See, e.g.*, *Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018) ("[W]e decline to address an issue that has not been briefed on appeal. . . . Simply put, we will not act as an advocate for one party to an appeal." (quotation marks omitted)). *But see Leatherwood v. State*, 548 So. 2d 389, 407 (Miss. 1989) (Hawkins, P.J., dissenting) (criticizing the Supreme Court for raising the separation-of-powers issue sua sponte in *Hall*).